UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE, a fictitious name,<br><br>                      Plaintiff-Petitioner,<br><br>  -against-<br><br>HOWARD ZUCKER, M.D., in his official capacity as Commissioner of Health of the State of New York, and ANNE MARIE T. SULLIVAN, M.D., in her official capacity as Commissioner of Mental Health for the State of New York,<br><br>                    Defendant-Respondents,<br><br>  -and-<br><br>RUTH RIVERA, GEORGE IWCZENKO, BARBARA ANN MOSS, M.D., ERIC SCOFF,<br><br>                    Intervenor Defendants. | No. 17-CV-1005 (GTS)(CFH) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT-RESPONDENTS' MOTION TO DISMISS**

                                                                                                   CONSTANTINE CANNON LLP
                                                                                                   Robert L. Begleiter
                                                                                                     Gary J. Malone
                                                                                                     Harrison J. McAvoy
                                                                                                     Margaux Poueymirou
                                                                                                  335 Madison Avenue, Fl. 9
                                                                                                  New York, New York 10017
                                                                                                  Tel: (212) 350-2700

Dated: November 6, 2017

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. THE COURT LACKS JURISDICTION AS THERE IS NO LONGER A LIVE CONTROVERSY .................................................................................................................. 2

    A. The Court Cannot Decide What Is A Purely Academic Question ................................ 2

    B. Petitioner's Claimed Injury is Not a Phenomenon Evading Review ............................ 2

    C. There Is No Reasonable Expectation that Petitioner Will Again Be Affected by the Regulations .................................................................................................................. 3

II. PETITIONER NEVER POSSESSED STANDING TO CHALLENGE THE OMH REGULATION ...................................................................................................................... 4

III. PETITIONER HAS NOT STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED .............................................................................................................................. 7

    A. Petitioner Has Failed to Allege a Valid Claim of Discrimination ................................ 7

    B. The NYHRL Cannot Be Applied to the State in These Circumstances ....................... 8

    C. Petitioner Has Not Alleged a Protectable Right to Intimate Association Under the First Amendment ........................................................................................................... 9

    D. The Regulations Are Supported by Weighty and Important Justifications, and Thus Petitioner's Article 78 Claim Should Be Dismissed ..................................................... 9

CONCLUSION ............................................................................................................................ 10

**PRELIMINARY STATEMENT**

On October 31, 2017, Plaintiff-Petitioner John Doe ("Petitioner") won the relief he has requested in this proceeding when he returned to Oceanview Manor Home for Adults ("Oceanview").[1]

Given that Petitioner no longer suffers from any alleged injury-in-fact that might support standing, this Court should dismiss his claims and reject his effort to have this Court render an impermissible advisory opinion on the challenged regulations: 18 N.Y.C.R.R. § 487.4(c) (the "DOH Regulation"), 14 N.Y.C.R.R. § 580.6(c)(2) (the "OMH Regulation") (collectively, the "Regulations"). In addition, at no point has Petitioner alleged any cognizable injury caused by the OMH Regulation, and any challenge to that regulation should be dismissed.

Given Petitioner's lack of standing, the Court need not consider whether any of the claims asserted are sufficient as a matter of law. However, if the Court does consider Petitioner's claims, they all fail as a matter of law. The Regulations were promulgated to accomplish important reforms to New York's provision of services to persons with mental illness, and to achieve the important and mandatory goal of compliance with the federal standards set forth in *Olmstead v. L.C.*, 527 U.S. 581 (1999), and the Americans with Disabilities Act ("ADA"), which require that public entities administer disability benefits in the most integrated setting possible and ensure that persons with disabilities are not housed in segregated settings. In addition, Petitioner's Article 78 claim cannot survive because the Regulations are neither discriminatory nor lacking in rational basis.

Because Petitioner lacks standing and the Petition's claims lack merit, this Court should dismiss the Petition with prejudice.

---

[1] See Begleiter Reply Decl. ¶ 3, Ex. A.

## ARGUMENT

**I.  THE COURT LACKS JURISDICTION AS THERE IS NO LONGER A LIVE CONTROVERSY.**

Petitioner—who challenged the Regulations in order to return to Oceanview—has now returned to Oceanview.  Unambiguous precedent requires that the Petition be dismissed as moot.

### A.  The Court Cannot Decide What Is A Purely Academic Question.

Petitioner asks the Court to do what it cannot—assess the appropriateness of the State's regulatory authority without an existing corresponding injury supporting his standing and the Court's jurisdiction.  It is black letter law that "an abstract dispute about the law, unlikely to affect the[] plaintiff[] any more than it affects other . . . citizens," much less of constitutional dimension, does not support standing.  *Alvarez v. Smith*, 558 U.S. 87, 93 (2009) (directing dismissal of Fifth Amendment challenge to Illinois law governing criminal forfeiture proceedings on mootness grounds following return of property).  *See also Mills v. Rogers*, 457 U.S. 291, 305 (1982) (discussing policy of constitutional avoidance).

Petitioner wrongly relies on the case of *Church of Scientology v. United States*, 506 U.S. 9 (1992), to support standing.  There, the Court held that an appeal of the IRS's petition to enforce a summons to obtain tape-recorded conversations was not moot because "meaningful relief" was still available to the appellants, namely destruction of the tapes.  *Id.* at 12–13.  Here, there is no "meaningful relief" that remains to be provided because Petitioner's return to an adult home remedies the entirety of his alleged injury; all that could possible decided by the Court—a pronouncement on the state of the law—cannot be provided within the Court's jurisdiction.

### B.  Petitioner's Claimed Injury is Not a Phenomenon Evading Review.

Petitioner is also mistaken in his argument that his claims fall within the exception to the standing doctrine for injuries capable of repetition but evading review.  The exception is only

-2-

available where "the challenged action is in its duration too short to be fully litigated prior to cessation."  *Davis v. FEC*, 554 U.S. 724, 735 (2008) (applying exception where election cycle prevented court's consideration); *Roe v. Wade*, 410 U.S. 113, 125 (1973) (applying exception where circumstances of "normal 266-day human gestation period" prevented court's review).  Here, there is no such phenomenon, and the exception is inapplicable.

### C. There Is No Reasonable Expectation that Petitioner Will Again Be Affected by the Regulations.

Petitioner incorrectly claims that his claims are not moot because the New York State Department of Health ("DOH") has voluntarily provided relief from its Regulation and may later reverse course.

Significantly, the DOH's accommodation of Petitioner was mandated by the Honorable Nicholas G. Garaufis, U.S. District Judge for the Eastern District of New York, as detailed in the State's opening brief.  As a result, the DOH's accommodation to Petitioner can fairly be characterized as involuntary, placing it outside the recognized exception to the mootness doctrine.  *See NTCH, Inc. v. FCC*, 841 F.3d 497, 505 (D.C. Cir. 2016) (finding voluntary cessation exception inapplicable with a third-party's "intervening action nullified" the challenged conduct); *Eagle Air Med Corp. v. Martin*, 377 F. App'x 823, 829 (10th Cir. 2010) ("The voluntary cessation doctrine does not apply when the decisions that moot a case are made by a non-party . . . .").

Even if the Court were to consider the exception, the Petition is moot because there is no reasonable likelihood that Petitioner will be restrained by the DOH Regulation again.  "[T]he voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the

-3-

alleged violation." *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 88 (2d Cir. 2005). A "plaintiff must point to something more" than "[t]he *possibility* of such" an outcome to satisfy the exception. *See* 397 F.3d at 88-89; *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (must show "more than the mere possibility" of future injury).

Here, both requirements are satisfied. Commissioner Zucker has represented, in open court, that the DOH will accommodate Petitioner going forward with respect to the DOH Regulation. *See Harrison & Burrows v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) ("[D]eference must be accorded to a state's representations that certain conduct has been discontinued."). Moreover, the State is bound by Judge Garaufis's directive. *See Stokes v. Wurtsboro*, 818 F.2d 4, 5 (2d Cir. 1987) (rejecting voluntary cessation doctrine where defendant municipality "entered into a binding, judicially enforceable agreement" to not engage in allegedly unconstitutional conduct). Finally, Petitioner has now returned to Oceanview, curing any claimed injury.

## II. PETITIONER NEVER POSSESSED STANDING TO CHALLENGE THE OMH REGULATION.

While Petitioner may have previously possessed standing to challenge the DOH Regulation, which prevents new admissions to adult homes if the home in question has a mental health census over 25%, no valid argument exists to demonstrate Petitioner's standing to challenge the OMH Regulation. The Petition contains no allegation that Petitioner ever was admitted to an OMH-regulated hospital.[2]

Although Petitioner argues that standing exists to challenge the OMH Regulation, Petitioner, tellingly, never claims to have been affected or injured by the OMH Regulation. And

---

[2] Petitioner mischaracterizes Respondents' opening brief by arguing that it falsely claims that Petitioner has never been admitted to an OMH-regulated hospital. (Opp'n Br. 9.) In their opening brief, Respondents merely recognize that *the Petition* does not allege that Petitioner has even been a patient in an OMH-regulated hospital. (Opening Br. 9.) No such allegation has been made to date.

-4-

Petitioner does not provide any evidentiary supports for his newly made claim of recent hospitalization, as is required to demonstrate standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Petitioner also overlooks the actual language and operation of the OMH Regulation. Of critical importance, the OMH Regulation specifically allows that a hospital may discharge a person to a transitional adult home if he or she resided there prior to hospitalization. 14 N.Y.C.R.R. § 580.6(c)(2).[3] So even assuming, hypothetically, that Petitioner was or will be hospitalized in the future while living at Oceanview, the OMH Regulation would not prevent Petitioner from returning to Oceanview as requested in the Petition.

Petitioner has not—and cannot—demonstrate an injury sufficient to confer standing. To have standing, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical . . . .'" *Lujan*, 504 U.S. at 560. While an allegation of threatened future injury *may* suffice, the "threatened injury must be certainly impending to constitute injury in fact," that is, "not too speculative" and not occurring "at some indefinite future time." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotation marks omitted); *Lujan*, 504 U.S. at 564 n.2. A "speculative chain of possibilities does not establish injury" supporting standing. *Clapper*, 133 S. Ct. at 1150. Accordingly, courts have found standing was lacking where the plaintiff's injury depended on yet-to-occur events such as: a possible future economic downturn, a future terrorist attack, a company's possible bankruptcy, and the possibility that the plaintiff may choose to buy a product. *See, e.g.*, *Ross v. AXA Equitable Life Ins. Co.*, 860 F.

---

[3] "A Hospital shall be prohibited from discharging any person with serious mental illness to a transitional adult home, . . . *unless the person was a resident of the home immediately prior to his or her current period of hospitalization*." (emphasis added).

App'x 41, 46 (2d Cir. 2017); *Cohen v. Facebook, Inc.*, No. 16-cv-4453, 2017 U.S. Dist. LEXIS 76701, at *15 (E.D.N.Y. May 18, 2017); *Waxman v. Cliffs Nat'l Res., Inc.*, 222 F. Supp. 3d 281, 288 (S.D.N.Y. 2016); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16cv-4697, 2016 U.S. Dist. LEXIS 149795, at *12-13 (S.D.N.Y. Oct. 26, 2016).

Indeed, courts in two related test cases filed by Petitioner's counsel dismissed claims brought by individual adult home residents on virtually identical grounds of lack of standing. *See Oceanview Home for Adults, Inc. v. Zucker*, No. 6012-16 (Sup. Ct. Albany Cty); *Hedgewood Manor Home for Adults, LLC v. Zucker*, No. 2016-52782 (Sup. Ct. Dutchess Cty.).[4] In both cases, the respective courts granted the motions in part, dismissing claims brought by individual residents for lack of standing. In *Hedgewood*, the court held that:

> The individual petitioners have failed to establish that they have suffered an injury in-fact, and can cite no immediate injury or loss. Fear or anxiety related to some future harm as alleged and any alleged consequences that may befall the individual petitioners are uncertain and speculative at best. Fear or anxiety related to some future harm is insufficient to confer standing.

(*Hedgewood* Op. 5-6, Ex. I to Sherrin Decl.) The *Oceanview* court held that:

> The resident petitioners have not alleged that they were turned away from Oceanview nor that they have personally suffered any harm due to the Regulations. Their speculative allegations rely upon assertions of possible future harm which are insufficient to confer standing.

(*Oceanview* Decision 7, Ex. H to Sherrin Decl.)

Here, where the Petition contains no allegation that Petitioner has been impacted by the OMH Regulation, much less hospitalized, the Court should dismiss the challenge for lack of standing. The only allegations that even potentially suggest an injury stemming from the OMH Regulation are conditional. (Petition ¶ 74 ("in the event he is hospitalized"), ¶ 76 ("who may in the future be ready to be discharged from hospitals").) In order for Petitioner to be injured by the

---

[4] Petitioner mischaracterizes the outcome of these motions, stating that "in each of these cases, the court has denied the motion to dismiss." (Opp'n Br. 12 n.2.)

OMH Regulation, a highly speculative chain of events must occur: Petitioner must be hospitalized in an OMH-regulated hospital; Petitioner must choose to return to an adult home; and Petitioner must decide that he does not want to return to Oceanview.  This hypothetical chain of events cannot support standing to challenge the OMH Regulation, and the Court should dismiss the Petition insofar as the OMH Regulation is challenged.

Petitioner relies on inapplicable authority.  *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014); *Virginia v. Am. Booksellers*, 484 U.S. 383 (1988).  Those cases' rationales apply only in the limited circumstance where a plaintiff makes a pre-enforcement challenge to a criminal statute.  *See Steffel v. Thompson*, 415 U.S. 452, at 459 (1974) ("In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a state that he claims deters the exercise of his constitutional rights."); *see also* 15 Moore's Federal Practice § 101.40(4)(e)(i) ("Plaintiffs threatened with prosecution under a criminal statute need not expose themselves to arrest and prosecution in order to challenge the statute's constitutionality.").  Accordingly, this line of authority has no precedential value to the instant case, which challenges a regulatory provision governing hospitals.

### III. PETITIONER HAS NOT STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

#### A. Petitioner Has Failed to Allege a Valid Claim of Discrimination.

Petitioner fails to explain how the Regulations result in the withholding of a State benefit in violation of the ADA, the Rehabilitation Act ("RA"), or Fair Housing Act ("FHA").  The Regulations do not impermissibly deprive Petitioner of *any* benefit provided by the State: they merely prevent Petitioner from receiving a State benefit *in the precise location that Petitioner desires*.  This is consistent with the ADA, RA, and FHA, as these statutes only guarantee that a covered individual "be provided with meaningful access to the benefit that the grantee offers."

*Lincoln CERCPAC v. HHC*, 147 F.3d 165, 167 (2d Cir. 1998). "Meaningful access" does not require that a plaintiff receive services in the location of his or her choice, *see id.* at 168, and Petitioner may seek admission to any compliant adult home in New York.

Petitioner fails to distinguish *Lincoln CERCPAC*. Petitioner notes that, in *Lincoln CERCPAC*, "the court found that there were no allegations pled that 'any of the children involved [were] being denied any care available to children without disabilities.'" (Opp'n Br. 15 (quoting *Lincoln CERCPAC*, 147 F.3d at 167).) *But neither is there an allegation here that Petitioner was denied any care available to non-disabled persons*. Petitioner merely alleges that he was prevented from receiving State benefits at the location of his choice, *i.e.*, an adult home that has not complied with the DOH Regulation. Analogous to *Lincoln CERCPAC*, the Regulations are challenged, "not because [they] will deprive [Petitioner] of medical service available to non-disabled [persons], but because the [Regulations] . . . will inconveniently relocate" the services that Petitioner desires. *See* 147 F.3d at 168.

### B. The NYHRL Cannot Be Applied to the State in These Circumstances.

Petitioner's NYHRL claim fails as a matter of law. Petitioner argues that this Court should interpret the NYHRL to apply beyond its own terms—that is, to apply beyond an "owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation." *See* N.Y. Exec. Law § 296(2)(a). However, Petitioner offers no authority for such an expansion. A state's mere regulation of an industry, no matter how involved, does not convert the State to an owner of regulated entities' property. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 358 (1974) ("extensive regulation by the State" does not make it "a partner or joint venture" such that liability may be imposed on the state). Nor can the adult homes' status as licensees possibly convert the State into an owner. *See Benjamin v. Koeppel*, 85 N.Y.2d 549,

554 (1995) ("[A] 'license' is a permit, granted by an appropriate governmental body to a person, firm, or corporation to pursue some occupation or to carry on some business subject to regulation."); *cf. Southworth v. State*, 47 N.Y.2d 874, 876 (1979) (state not liable for negligence of licensee). Were that the case, the State could be treated as the owner of every car owned by a licensed driver in New York. This claim should be dismissed.

   **C. Petitioner Has Not Alleged a Protectable Right to Intimate Association Under the First Amendment.**

As set forth in Respondents' opening brief, Petitioner's First Amendment claims are meritless and should be dismissed. In an effort to save this claim, Petitioner now asserts that dismissal is inappropriate in the procedural posture of a motion to dismiss. On the contrary, courts routinely dismiss First Amendment claims as a matter of law. *See, e.g.*, *Gray-Davis v. Rigby*, No. 14-1490, 2016 U.S. Dist. LEXIS 42909, at *13 (N.D.N.Y. Mar. 31, 2016); *Ranta v. New York*, No. No. 14-3794, 2015 U.S. Dist. LEXIS 13718, at *10 (E.D.N.Y. Sept. 30, 2015).

   **D. The Regulations Are Supported by Weighty and Important Justifications, and Thus Petitioner's Article 78 Claim Should Be Dismissed.**

Petitioner offers several arguments as to why his Article 78 claim should be upheld, none of which are availing. Administrative regulations that are challenged under an "arbitrary and capricious" standard are routinely upheld unless "there is no rational basis" for their promulgation. *Arrocha v. Bd. of Educ.*, 93 N.Y.2d 361, 365 (1999). That is, a "challenger must establish that a regulation is so lacking in reason for its promulgation that it is essentially arbitrary." *N.Y. State Ass'n of Counties v. Axelrod*, 78 N.Y.2d 158, 166 (1991).

Instead of alleging facts showing that the regulations are so "lacking in reason" that they are essentially arbitrary, Petitioner complains that the Regulations are not supported by sufficient scientific studies or published articles. (*See* Opp'n Br. 20-21.) Not only does this reveal a misunderstanding of the applicable legal standard for evaluating the validity of the Regulations,

it is also inaccurate. The Regulations were promulgated for the twin purposes of (1) reforming the State's provision of housing and services to the mentally ill, and (2) ensuring compliance with federal standards governing the provisions of services to the disabled under *Olmstead* and implementing reform initiatives. They were adopted pursuant to important and necessary goals. *See* N.Y. Reg., Jan. 16, 2013, at 6, 8. While Petitioner may disagree with the State's policies, a regulation is not arbitrary if based on "rational choices among competing policy considerations." *N.Y.C. Health & Hosps. Corp. v. McBarnette*, 84 N.Y.2d 194, 205 (1994). Similarly, Petitioner's argument that OMH's clinical advisory is *ultra vires* does not bear on the Regulations' rationality—and is incorrect. *See* N.Y. Mental Hygiene Law § 7.07(b) ("[OMH] shall advise and assist the governor in developing policies to meet the needs of the mentally ill and encourage their full participation in society.")

## **CONCLUSION**

In light of the foregoing, Respondents respectfully request that this Court dismiss the Petition.

Dated: New York, New York
November 6, 2017

                                            Respectfully submitted,

                                            CONSTANTINE CANNON LLP

                                            By:   *s/ Robert L. Begleiter*
                                            Robert L. Begleiter (Bar Roll No. 107494)
                                            Gary J. Malone
                                            Harrison J. McAvoy
                                            Margaux Poueymirou
                                            335 Madison Avenue, Fl. 9
                                            New York, New York 10017

                                            *Attorneys for Respondent-Defendants*