UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE, a fictitious name,

                              Petitioner,

v.

HOWARD ZUCKER, M.D., in his official            1:17-CV-1005
capacity as Commissioner of Health of the       (GTS/CFH)
State of New York; and ANNE MARIE T.
SULLIVAN, M.D., in her official capacity
as Commissioner of Mental Health of the
State of New York,

                              Respondents,

and

RUTH RIVERA; GEORGE IWCZENKO;
and ERIC SCOFF,

                              Intervenor-Respondents.
_____

APPEARANCES:                                    OF COUNSEL:

O'CONNELL & ARONOWITZ                            JEFFREY J. SHERRIN, ESQ.
  Counsel for Petitioner
54 State Street, 9th Floor
Albany, New York 12207-2501

CONSTANTINE CANNON LLP                           ROBERT L. BEGLEITER, ESQ.
  Counsel for Respondents                        MATTHEW J. KOENIG, ESQ.
353 Madison Avenue, 9th Floor
New York, New York 10017-4611

ARNOLD & PORTER KAYE SCHOLER LLP                 GLENN J. POGUST, ESQ.
  Counsel for Intervenor-Respondents             KYLE D. GOOCH, ESQ.
250 West 55th Street
New York, New York 10019

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this disability-discrimination action filed by John Doe ("Petitioner") against Howard Zucker, M.D., in his official capacity as Commissioner of Health of the State of New York, and Marie T. Sullivan, M.D., in her official capacity as Commissioner of Mental Health of the State of New York, ("Respondents") and Ruth Rivera, George Iwczenko, and Eric Scoff as intervenors ("Intervenor-Respondents"), is Petitioner's motion to remand to state court, and Respondents' motion to dismiss. (Dkt. Nos. 20, 27.) For the reasons set forth below, Petitioner's motion to remand this action is denied and Respondents' motion to dismiss Petitioner's Petition is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Relevant Procedural Background

Petitioner commenced this action on or about November 22, 2016, in the Supreme Court of the State of New York for the County of Albany pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). (Dkt. No. 2 [Pet'r's State Ct. Petition].)

On June 27, 2017, Intervenor-Respondents moved to intervene in the state court proceeding pursuant to CPLR § 7802. (Dkt. No. 1, Attach. 6.) On August 11, 2017, Intervenor-Respondents' motion to intervene was granted. (Dkt. No. 1, Attach. 2.) On September 8, 2017, Intervenor-Respondents removed Petitioner's state court action to this Court. (Dkt. No. 1.)

### B. Petitioner's Claims

Generally, liberally construed, the Petition alleges as follows. (Dkt. No. 2.) Petitioner is diagnosed with paranoid schizophrenia, which resulted in him being labeled as having a "serious mental illness" ("SMI") pursuant to the Department of Health ("DOH") regulation 18 N.Y. Comp. R. & Regs. ("NYCRR") § 487.2. (*Id.*)

Until approximately two years ago, Petitioner had been a resident at Oceanview Manor Home for Adults d/b/a Oceanview Manor ("Oceanview") for approximately twelve years. (*Id.*) Approximately two years ago, Petitioner took advantage of a program offered by Respondents that enabled him to live in his own apartment, which is referred to as "supported housing." (*Id.*) While in supported housing, Petitioner was moved several times. (*Id.*) Petitioner is not satisfied with his current housing situation because he is unfamiliar with the area, does not feel safe, and cannot easily go play basketball, as he could when he lived at Oceanview Manor. (*Id.*) Petitioner is isolated, lonely, and has difficulty meeting people and exercising since moving into supported housing. (*Id.*)

Petitioner desires to move back to Oceanview, which is a transitional adult home pursuant to DOH regulation. (*Id.*) Petitioner was informed Oceanview is willing to accept him as a resident but cannot and will not do so because of the DOH regulation, which prohibits transitional adult homes "with a certified capacity of eighty or more and a mental health census as defined in section 487.13(b)(4) of this Part, of 25 percent or more of the resident population" to "admit any person whose admission will increase the mental health census of the facility." (*Id.*)

Due to these new regulations, which were enacted on or about January 16, 2013, adult homes are forced to deny people who suffer from SMI, like Petitioner, to access housing and services of adult homes in violation of federal and state law. (*Id.*) Further, the Office of Mental Health ("OMH") regulations prohibit hospitals "from discharging any patient with a serious mental illness to a transitional adult home, as defined in regulations of the Commissioner of Health, unless the person was a resident of the home immediately prior to his or her current period of hospitalization." (*Id.*)

Generally, based on these factual allegations, the Petition asserts the following six claims: (1) a claim that Respondents violated the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* ("Count One"); (2) a claim that Respondents violated the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794(a) ("Count Two"); (3) a claim that Respondents violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* ("Count Three"); (4) a claim that Respondents violated the New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL") ("Count Four"); (5) a claim that Respondents violated his right to intimate association under the First Amendment ("Count Five"); and (6) a claim that the challenged regulations "are arbitrary, capricious, and irrational" under an unspecified Constitutional or statutory provision ("Count Six").[1] (*Id.*)

Familiarity with these claims and the factual allegations supporting them in the Petition is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

### C.   Parties' Briefing on Petitioner's Motion to Remand

Generally, in support of his motion to remand, Petitioner makes the following four arguments: (1) Intervenor-Respondents' Notice of Removal is incurably defective because Respondents did not consent to removal at the time of removal as is required by 28 U.S.C. § 1446(b)(2)(A); (2) in the alternative, Intervenor-Respondents are barred from exercising any right of removal because they are not the "real parties in interest" in the lawsuit and Respondents (who are the "real parties in interest") waived their right to remove; (3) even if the Court finds

---

[1]      Presumably this claim arises under Article III, Section 1 of the New York State Constitution, which provides that "[t]he legislative power of this State shall be vested in the Senate and the Assembly."

that Intervenor-Respondents had a right to removal they waived that right when they indicated their intention to litigate this matter in state court and thus, waived their right to removal; and (4) in any event, Petitioner's two Article 78 claims (i.e., his Fourth and Sixth Causes of Action) must be severed and remanded because those claims must be litigated exclusively in New York State Court.  (*See generally* Dkt. No. 24 [Pet'r's Mem. of Law].)

Generally, in response to Petitioner's motion, Intervenor-Respondents assert five arguments: (1) Intervenor-Respondents have complied with the unanimity requirement of 28 U.S.C. § 1446 (which was amended in 2011) because they unambiguously represented in the Notice of Removal that Respondents consented to the removal and, in any event, to the extent there was a technical defect, that defect has now been cured; (2) Intervenor-Respondents had the right to remove this action because (a) they are also "real parties in interest" (in that they would be harmed by the relief sought by Petitioner), and (b) they did not waive that right by seeking a protective order in state court; (3) Respondents did not waive their right to consent to the removal; (4) alternatively, even if the removal was not valid pursuant to 28 U.S.C. §§ 1441 and 1446, it is valid pursuant to the All Writs Act; and (5) the Court has original jurisdiction over Petitioner's federal law claims and supplemental jurisdiction over Petitioner's state law Article 78 claims, which have not been made non-removable by statute.  (*See generally* Dkt. No. 32 [Intervenor-Resp'ts' Opp'n Mem. of Law].)

Generally, in response to Petitioner's motion, Respondents assert four arguments: (1) the consent requirement of 28 U.S.C. § 1446 has been satisfied under the circumstances; (2) Intervenor-Respondents have a right to remove, which has not been waived under the circumstances; and (3) Respondents cannot waive Intervenor-Respondents' right to remove; and

(4) the Court may exercise removal jurisdiction over Petitioner's state law claims, which have not been rendered non-removable by the statute. (*See generally* Dkt. No. 33 [Resp'ts' Opp'n Mem. of Law].)

Generally in its reply, Petitioner asserts three arguments: (1) this proceeding has no bearing on the federal settlement referenced by Intervenor-Respondents; (2) Respondents cannot consent to removal because (a) Intervenor-Respondents were never served with service of process and (b) the 2011 amendments to 28 U.S.C. § 1446 do not permit a defendant whose time to remove has expired to join in or consent to removal filed by a defendant who has not been served with process; and (3) Respondents should not be allowed the cure their lack of consent by filing an opposition to remand. (*See generally* Dkt. No. 36 [Pet'r's Reply Mem. of Law].)

### D. Parties' Briefing on Respondents' Motion to Dismiss

Generally, in support of their motion to dismiss, Respondents make the following three arguments: (1) the U.S. District Court for the Eastern District of New York's March 22, 2017, directive to New York (in a related proceeding) to allow Petitioner to move to an adult home moots the controversy and eliminates any basis for jurisdiction; (2) Petitioner lacks standing to challenge the OMH regulation because the Petition does not allege he is currently, or ever has been, a patient in an OMH-regulated hospital and thus in a position to be injured by the OMH regulation; and (3) the Petition fails to state a cause of action in that (a) Counts One, Two, and Three do not allege any actionable discrimination because Petitioner is free to seek residence in any compliant adult home in New York that does not already have a resident population with greater than 25% of residents classified as having SMI, (b) with regard to Count Four, the State does not own, and is not providing, a public accommodation and thus cannot be held liable

pursuant to the NYHRL, (c) with regard to Count Five, the Petition does not identify a protectable right to intimate association under the First Amendment because Petitioner does not have any such right here and in any event is still free to associate with any or all individuals at Oceanview, and (d) with regard to Count Six, Petitioner's Article 78 claim lacks foundation and should be dismissed because the regulations are a rational exercise of discretion by DOH and OMH. (*See generally* Dkt. No. 27, Attach. 1 [Resp'ts' Mem. of Law].)

Generally, in response to Respondents' motion, Petitioner asserts three arguments: (1) allowing him to move back into an impacted adult home does not moot the controversy because the regulations he challenges continue to impact him and others with a history of SMI, and alternatively the Court should still hear the controversy because the allegedly unlawful activity is capable of repetition yet evading review; (2) Petitioner has standing to bring this action because he has been a patient in an OMH-regulated hospital and is always at risk of a psychiatric admission; and (3) Petitioner stated valid claims in that (a) the challenged regulations prohibit an individual with SMI, like him, from moving into a desired adult home solely because he suffers from a SMI, (b) N.Y. Exec. Law § 296 provides for a public accommodation owned by a state or local government and is extended to the government's agents or lessees, (c) the challenged regulations unduly burden the First Amendment right to intimate association for persons with SMI and the Petition has sufficiently pled facts to sustain such a claim, and (d) the challenged regulations are arbitrary and capricious because they categorize individuals solely based on their mental illness and are unsupported by empirical evidence. (*See generally* Dkt. No. 37 [Pet'rs' Opp'n Mem. of Law].)

Generally in their reply, Respondents assert three arguments: (1) the Court lacks jurisdiction because (a) Petitioner has already been returned to an adult home, which was the entirety of his alleged injury, (b) Petitioner's injury is not a phenomenon capable of repetition yet evading review, and (c) there is no reasonable expectation that Petitioner will again be affected by the regulations because the exception for Petitioner was mandated by U.S. District Judge Garaufis for the Eastern District of New York; (2) Petitioner never possessed standing to challenge the OMH regulation because the Petition contains no allegation that Petitioner was ever admitted to an OMH-regulated hospital, Petitioner does not claim to have ever been affected or injured by the OMH regulation, and he does not provide any evidentiary support for his newly made claim of recent OMH hospitalization; and (3) Petitioner has not stated a claim upon which relief can be granted because (a) Petitioner has failed to alleged a valid claim of discrimination, (b) the NYHRL cannot be applied to the state in these circumstances given that New York is not an owner of a regulated entity's property, (c) Petitioner has not alleged a protectable right to intimate association under the First Amendment of the U.S. Constitution, and (d) the regulations are supported by weighty and important justifications and thus Petitioner's Article 78 claim should be dismissed. (*See generally* Dkt. No. 38 [Resp'ts' Reply Mem. of Law].)

## II.    ANALYSIS

### A.    Petitioner's Motion to Remand

#### 1.    Legal Standard Governing Motions to Remand

"A state court action may be removed to federal court only in limited circumstances where the federal court has original jurisdiction over the claims in the plaintiff's complaint." *Dumont v. U.S.*, 13-CV-0873, 2013 WL 6240468, at *6 (N.D.N.Y. Dec. 3, 2013) (Suddaby, J.)

(citing 28 U.S.C. § 1441). "Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Market Makers Antitrust Litigation*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 [1941]) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."). Removal statutes are to be strictly construed against removal and in favor of remand. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 220 (2d Cir. 2013) (citing *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32-33 [2002]; *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 [1983]); *see also Pan Atl. Group, Inc. v. Republic Ins. Co.*, 878 F. Supp. 630, 638 [S.D.N.Y. 1995]) (holding that if there is doubt as to whether federal jurisdiction exists, remand is appropriate).

Thus, "[a] party seeking to remove an action from state to federal court bears the burden of proving federal jurisdiction." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 316 (S.D.N.Y. 2003) (citing *Linardos v. Fortuna*, 157 F.3d 945, 947 [2d Cir. 1998]; *Pan Atl. Group, Inc.*, 878 F. Supp. at 638).

In order to remove a case from state court to federal court on the basis of federal question jurisdiction, the removing party must show that the action, as originally filed in state court, presents a federal question. *Dumont*, 2013 WL 6240468, at *7. A federal question arises if a substantial, disputed question of federal law is presented on the face of the well-pleaded complaint. *Id.*; *City of Rome, New York v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 174 (2d Cir. 2004) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 [2003]).

Where an interveneor seeks removal, the "thirty day statutory period begins to run either on the date an intervention petition is filed in the state court from which removal is sought or on the date the state court grants the motion to intervene." *Bank of N.Y. Mellon v. Walnut Place LLC*, 819 F. Supp. 2d 354, 359 (S.D.N.Y. 2011), *rev'd on other grounds sub nom. BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169 (2d Cir. 2012); *see also Tucker v. Equifirst Corp.*, 57 F. Supp. 3d 1347, 1349 (S.D. Ala. 2014) ("[T]he 30–day period began to run when the motion to intervene was granted.").

### 2.    Whether Petitioner's Motion to Remand Should Be Granted

After carefully considering the matter, the Court denies Petitioner's motion to remand for the reasons stated in Intervenor-Respondents' and Respondents' opposition memoranda of law. (Dkt. No. 32; Dkt. No. 33.)  To those reasons, the Court adds the following analysis.

### a.    Whether There Was Unanimous Consent to Removal

After carefully considering the matter, the Court finds that there was unanimous consent to the removal.  Pursuant to 28 U.S.C. § 1446(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."

Here, Respondents provided written notice of their consent to removal to Intervenor-Respondents on August 29, 2017, ten days before Intervenor-Respondents removed Petitioner's state court action to this Court.  (Dkt. No. 1; Dkt. No. 1, Attach. 2; Dkt. No. 16, at 1, n.1.)  As a result, when Intervenor-Respondents filed their notice of removal, they represented unambiguously (in a document governed by Fed. R. Civ. P. 11) that Respondent has consented to the removal.  (Dkt. No. 1, at ¶ 21.)  At least three courts of appeals have held such a

representation to satisfy the unanimity requirement. *See Mayo v. Bd. of Educ. of Prince George's Cty.*, 713 F.3d 735, 742 (4th Cir. 2013) ("To be sure, § 1446 requires at least one notice of removal signed by at least one attorney, in accordance with Rule 11, thus mandating that at least one attorney for the removing defendant or defendants be accountable to the court by representing, as provided in Rule 11, that removal is warranted by law and is not pursued for an improper purpose and that the facts alleged are justified or supported."); *Proctor v. Vishay Intertechnology, Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("[W]e conclude that the filing of a notice of removal can be effective without individual consent documents on behalf of each defendant. One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient."); *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201-02 (6th Cir. 2004) ("[T]he attorney for AutoAlliance, AAI and Childress was bound by Rule 11 when she represented to the district court that Kelly consented to the removal.").

Moreover, Respondents provided written notice of their consent of removal to the Court by letter on September 20, 2017, twelve days after Intervenor-Respondents removed Petitioner's state court action to this Court. (Dkt. No. 16.) Both a court of appeals and the undersigned have, in the past, found such a post-removal letter to satisfy the unanimity requirement. *See Griffioen v. Cedar Rapids and Iowa City Rw. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015) ("We . . . . hold that a defendant's timely removal notice indicating consent on behalf of a codefendant, signed and certified pursuant to Rule 11 and followed by the filing of a notice of consent from the codefendant itself, sufficiently establishes that codefendant's consent to removal."); *Crenshaw v. McNamara*, 15-CV-6229, 2016 WL 228358, at *2 (W.D.N.Y. Jan. 19, 2016) (Suddaby, C.J.,

sitting by designation) (holding that a letter filed with court by the RPD Defendants indicating that "RPD Defendants 'support and join' the motion to remove and oppose the motion to remand . . . [was] sufficient to independently express RPD Defendants' consent to removal.").

In any event, Respondents have opposed Petitioner's motion to remand, thus independently expressing their consent to removal. At least three courts of appeals have held such an opposition to satisfy the unanimity requirement. *See Stone v. Bank of New York Mellon, N.A.*, No. 13-15433, 2015 WL 1769370, at *2 (11th Cir. 2015) ("Although Prommis did not join the notice of removal, it did oppose remand, and therefore the district court did not err by refusing to remand for a technical defect related to the unanimity rule."); *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009) ("And in this particular case, even assuming that Home Depot's answer failed to satisfy the unanimity requirement, resulting in a technical defect in the removal process, the defect was subsequently cured when Home Depot opposed Esposito's remand motion, thereby clearly communicating its desire to be in federal court."); *Harper*, 392 F.3d at 202 ("In addition, the fact that [the defendant] opposed [the plaintiff's] motion to remand cured any purported defect in the removal petition."); *cf. Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 933 (8th Cir. 2012) (holding that the unanimity requirement was satisfied where a non-removing defendant's filed, in federal court, a motion to dismiss that incorporated a brief arguing that removal was "appropriate").

Finally, the Court finds that Intervenor-Respondents had been properly served (for purposes of 28 U.S.C. § 1446[b][2][A]) by the time they removed this action on September 8, 2017. Pursuant to CPLR § 1014, "[a] motion to intervene shall be accompanied by a proposed pleading setting forth the claim or defense for which intervention is sought." This requirement

presumes that, prior to filing a motion to intervene, the intervenor would have access to the complaint or petition.[2]  As a result, New York State courts have not required the original plaintiff to re-serve the complaint or petition on an intervenor.  *See Town of Southold v. Cross Sound Ferry Servs., Inc.*, 256 A.D.2d 403, 404 (N.Y. App. Div., 2d Dept. 1998) (granting intervenor status to intervening plaintiff and deeming intervening plaintiff's intervening complaint served); *Stockdale v. Hughes*, 189 A.D.2d 1065, 1067-68 (N.Y. App. Div., 3d Dept. 1993) (granting intervenor status to intervening defendant who filed an answer with motion to intervene and granting intervenor defendant's motion to dismiss); *Pirrotti v. Town of Greenburgh*, 25 Misc. 3d 1226(A), at *5 (N.Y. Sup. Ct., Westchester Cnty. 2009) (granting intervenor status to intervening respondents and deeming intervening respondents' cross claims duly filed and served); *Niemann v. Luca*, 168 Misc. 2d 1023, 1028-29 (N.Y. Sup. Ct., Suffolk Cnty. 1996) (granting intervenor status to an intervening plaintiff and directing the intervening plaintiff to file the intervening complaint within fifteen days of the decision and order).

For each of these alternative reasons, the Court finds that there was unanimous consent to removal in this action.

Finally, for all of these reasons, the Court finds that there was unanimous consent to the removal.

---

[2]  "It has been held that omission of the pleading is jurisdictional; that in its absence the court has 'no power' to entertain the motion."  DAVID D. SIEGEL, NEW YORK PRACTICE: PRACTITIONER TREATISE SERIES, 299 (3RD ED. WEST GROUP 1999).

### b.     Whether Intervenor-Respondents Were Barred from Exercising a Right to Removal

After carefully considering the matter, the Court finds that Intervenor-Respondents were

entitled to seek removal within thirty days after the state court granted their motion to intervene.

Petitioner argues that Intervenor-Respondents were barred from removing this action

because they are not a "real party in interest" in this lawsuit, and the actual "real parties in

interest" (i.e. Respondents) waived their right to remove.  (Dkt. No. 20.)  For the reasons set

forth in Intervenor-Respondents' and Respondents' opposition memoranda of law, the Court

finds that Intervenor-Respondents are "real party in interests" because they are individuals who

have alleged that they will be injured if the regulations that Petitioner seeks to strike down are

not enforced.  *See, e.g., Bank of N.Y. Mellon,* 819 F. Supp. 2d at 358-59; *Tucker v. Equifirst

Corp.*, 57 F. Supp. 3d 1347, 1349 (S.D. Ala. 2014) (holding that intervenors may file notice of

removal as long as they are properly aligned as defendants and do so within thirty days after

their motion to intervene is granted).  In the alternative, the Court finds that the 2011

amendments to 28 U.S.C. § 1446 rendered inapplicable the authorities cited by Petitioner for the

point of law that an intervening party may not remove an action when the original defendant's

right to remove has expired.

Petitioner also argues that Intervenor-Respondents were barred from removing this action

because Respondents waived their right to removal by moving to dismiss Petitioner's Petition on

May 31, 2017, approximately one month before Intervenor-Respondents moved to intervene.

(Dkt. No. 24.)  For the reasons set forth in Intervenor-Respondents' and Respondents' opposition

memoranda of law, the Court finds that Respondents' filing of a motion to dismiss in state court

did not, and could not, waive Intervenor-Respondents' right to removal.  *See Eclipse Aesthetics*

*LLC v. Regenlab USA, LLC*, 16-CV-1448, 2016 WL 4800342, at *4 (N.D. Tex. Sept. 12, 2016) ("[T]he Court concludes that an earlier-served defendant's litigation conduct does not constitute a waiver of its right to consent to the notice of removal filed by a later-served defendant.") (collecting cases).

For all of these reasons, the Court finds that Intervenor-Respondents are not barred from exercising their right to removal.

<blockquote>

**c.      Whether Intervenor-Respondents Waived Their Right to Removal by Indicating an Intention to Litigate this Matter in State Court**

</blockquote>

After carefully considering the matter, the Court finds that Intervenor-Respondents did not waive their right to removal by litigating this matter in state court.

Petitioner argues that Intervenor-Respondent waived their right to removal by expressing an intent to join in Respondents' motion to dismiss.  (Dkt. No. 24.)  In support of this argument, Petitioner includes excerpts from a hearing held in state court on August 11, 2017, in which counsel for Intervenor-Respondents indicated that Intervenor-Respondents support Respondents' motion to dismiss and oppose Petitioner's motion for a preliminary injunction.  (*Id.*)

As an initial matter, "the Second Circuit does not appear to have endorsed a waiver exception to an otherwise timely removal."  *Stemmle v. Interlake Steamship Co.*, 198 F. Supp. 3d 149, 166 (E.D.N.Y. 2016).  In any event, even assuming that there is such a waiver exception to removal, courts have tended to limit the exception to instances where a defendant takes a "clear and unequivocal" action in state court that manifests its intent to have the matter adjudicated there.  *Stemmle*, 198 F. Supp. 3d at 166 (citing *Engle v. R.J. Reynolds Tobacco Co.*, 122 F. Supp. 2d 1355, 1360 [S.D. Fla. 2000]); *see also Heafitz v. Interfirst Bank of Dallas*, 711 F. Supp. 92,

96 (S.D.N.Y. 1989) (holding that removal may be "improper if defendant manifested an intent to litigate in state court, and thereby waived its right to remove."). A "waiver will not occur by defensive action in state court" and "not every action by a defendant is 'defensive.'" *Heafitz*, 711 F. Supp. at 96.

> If the motion is made only to preserve the *status quo ante* and not to dispose of the matter on its merits, it is clear that no waiver has occurred. On the other hand, if a motion seeks a disposition, in whole or in part, of the action on its merits, the defendant may not attempt to invoke the right to remove after losing on the motion.

*Bolivar Sand Co., Inc. v. Allied Equip., Inc.*, 631 F. Supp. 171, 173 (W.D. Tenn. 1986).

Here, the state court held a hearing on August 11, 2017, at which the state court heard oral argument then granted intervenor status to Intervenor-Respondents. (Dkt. No. 20, Attach. 4.) Thereafter, the state court indicated a need to address additional pending motions including Respondents' motion to dismiss and Petitioner's motion for a preliminary injunction. (Dkt. No. 20, Attach. 4, at 28-31.) Before addressing the motions to dismiss and for a preliminary injunction, the state court asked what impact the Intervenor-Respondent's intervention would have on the proceedings. (*Id.* at 29.) In response, Intervenor-Respondents through their counsel stated,

> Well, your Honor, one, we know that on for today is the motion to dismiss. We support that. I know having gone through this now but if the case doesn't continue, we support that and we oppose the preliminary injunction. We'll defer to the State on that. We are not looking to delay anything on those issues. If something comes up going forward, we will fall into that process. We do not want this to be something that would delay anything and we don't take issue with the position of the State so far in the case.

(*Id.*)

Such statements by Intervenor-Respondents are far from a clear and unequivocal action in state court that manifested their intent to have the matter adjudicated there. Intervenor-Respondents here, unlike the intervenor in *Heafitz v. Interfirst Bank of Dallas*, did not file any moving papers or brief the issues. *Heafitz v. Interfirst Bank of Dallas*, 711 F. Supp. 925 (S.D.N.Y. 1989). In addition, Intervenor-Respondents did not request to formally join in Respondents' pending motion to dismiss. *Heafitz,* 711 F. Supp 925. Instead, Intervenor-Respondents merely indicated their support, which was insufficient to waive their right to seek removal.

Petitioner also argues that Intervenor-Respondents' Order to Show Cause pursuant to CPLR § 3103(c), which requested various relief concerning certain medical records of Intervenor-Respondents that were improperly obtained by Petitioner (the "OSC"), also waived Intervenor-Respondents' right to removal. (Dkt. No. 1, Attach. 9.) The Court finds that the filing of this OSC was defensive and would not have disposed of the matter on its merits. *Heafitz*, 711 F. Supp. at 96.

For all of these reasons, the Court finds that Intervenor-Respondents did not waive their right to removal by litigating this matter in state court.

> **d. Whether this Court Has Jurisdiction over Petitioner's Article 78 Claims**

After carefully considering the matter, the Court finds that, for the reasons set forth in Respondents' and Intervenor-Respondents' opposition memoranda of law, this Court has jurisdiction over all of Petitioner's causes of action. (Dkt. Nos. 32, 33.) In addition, the Court finds that Petitioner's Article 78 claims are removable for the reasons set forth by the U.S. District Court for the Eastern District of New York in *Residents & Families United to Save Our*

*Adult Homes v. Zucker,* 16-CV-1683, 2017 WL 5496277, at *11-13 (E.D.N.Y. Jan. 24, 2017).

There, the Court held that plaintiff's Article 78 claims were removable where the federal law

claims asserted in plaintiffs' petitions "fall within the court's original jurisdiction, and the court

has supplemental jurisdiction over the state law claims within these pleadings because the

federal and state law claims 'derive from a common nucleus of operative fact,' namely the effect

of the regulations on the adult home industry and residents of the adult homes." *Residents &

Families United to Save Our Adult Homes*, 2017 WL 5496277, at *13.

As a result, the Court does not, and need not, address Respondents' argument that this

case is removable pursuant to 28 U.S.C. § 1651(a) (the All Writs Act). (Dkt. No. 32, at 24-25.)

For all of these reasons, Petitioner's motion to remand is denied.

**B.      Respondents' Motion to Dismiss**

After carefully considering the matter, the Court denies Respondents' motion to dismiss

to the extent it is based on mootness; the Court grants Respondents' motion to dismiss to the

extent it is based on a lack of standing; and the Court grants in part and denies in part

Respondents' motion to dismiss to the extent it is based on a failure to state a claim. (Dkt. No.

27 [Resp'ts' Mem. of Law]; Dkt. No. 38 [Resp'ts' Reply Mem. of Law].)

**1.      Whether Petitioner's Claims Are Moot**

After carefully considering the matter, the Court finds that, for the reasons set forth in

Petitioner's memorandum of law, Respondents' motion to dismiss for mootness should be

denied. (Dkt. No. 37.) To those reasons, the Court adds the following analysis

### a. Legal Standard Governing Motions to Dismiss for Mootness

Pursuant to Fed. R. Civ. P. 12(b)(1), "a defendant may move to dismiss for want to subject matter jurisdiction when a matter has become moot and, therefore, no live case or controversy remains." *Akinde v. New York City Health and Hosp. Corp.*, 16-CV-8882, 2017 WL 4350587, at *1 (S.D.N.Y. July 7, 2017). "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

"A party seeking to have a case dismissed as moot bears a heavy burden." *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005). However, "[t]here is no question that Article III of the Constitution limits federal judicial Power, that is, federal-court jurisdiction, to Cases and Controversies." *Lillbask ex rel. Mauclaire*, 397 F.3d at 84 (internal quotation marks omitted). "[T]he dispute before the court must be real and live, not feigned, academic, or conjectural. . . . When the issues in dispute between the parties are no longer live, a case becomes moot, and the court–whether trial, appellate, or Supreme–loses jurisdiction over the suit, which therefore must be dismissed." *Id.* (internal quotation marks omitted). "The core question in [a] mootness inquiry is whether granting a present determination of the issues offered will have some effect in the real world." *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1266 (10th Cir. 1999).

There is an exception to the mootness doctrine, which requires that two circumstances are simultaneously present: "(1) the challenged action is in duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same

complaining party would be subjected to the same action again." *Lillbask ex rel. Maulclaire*, 397 F.3d at 85 (internal quotation marks omitted).

Similarly, "voluntary cessation of the alleged illegal conduct usually will render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Lamar Adver. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (quoting *Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451 [2d Cir. 2002]).

### b.    Respondents' Court-Ordered Agreement

Respondents agreed, and were ordered by the U.S. District Court Eastern District of New York, to allow Petitioner to move back to a transitional adult home. (Dkt. No. 27, Attach. 3, at 6-7.) On October 31, 2017, Petitioner moved back into Oceanview. (Dkt. No. 38, Attach. 1, at 4.)

Respondents argue that, because of this agreement and Petitioner's return to Oceanview, the issues are moot. The Court respectfully disagrees with Respondents. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). While the Court rejects Petitioner's argument that he is suing on behalf of others (given that this is not a class action), the Court accepts Petitioner's argument that he "seeks not just the capricious permission of the State for him to make this singular move." (Dkt. No. 37, at 12.)

In *Vitek v. Jones*, the Supreme Court held that a matter was not moot in a similar situation. *Vitek v. Jones*, 445 U.S. 480, 486-87 (1980). There, while incarcerated for a criminal conviction, Jones was transferred to a secure mental hospital after it was determined that he could not receive proper treatment in a penal complex pursuant to Nebraska Rev. Stat. § 83-176(2). *Vitek*, 455 U.S. at 484. Jones then intervened in the civil case, which was brought by other prisoners against the appropriate state officials challenging on procedural due process grounds the adequacy of the procedures by which Nebraska statutes permit transfers from the prison complex to a mental hospital. *Id.* The district court declared the Nebraska law unconstitutional as applied to Jones. *Id.* at 485. Thereafter, Jones was paroled on the condition that he accept psychiatric treatment. *Id.* "[R]elying on Jones' history of mental illness and the State's representation that he represented a serious threat to his own safety as well as to that of others, [the district court] found that Jones 'is in fact under threat of being transferred to the state mental hospital'" even though Jones was on parole. *Id.* at 486. When the Supreme Court heard the case, Jones had violated his parole. *Id.* However, the Court affirmed the district court's holding that the case was not moot, even when Jones was on parole, because the "[r]eality of the controversy between Jones and the State has not been lessened by the cancellation of his parole and his return to the state prison, where he is protected from further transfer by the outstanding judgment and injunction of the District Court." *Id.*

Similarly, here, Petitioner argues that, even now that he has returned to Oceanview, the matter is not moot. Specifically, Petitioner argues that, should he desire to move to another adult transitional home, the challenged regulations bar him from doing so, and bar him from returning to an adult transitional home if he again leaves and/or decides to try an alternative living

21

arrangement, e.g., short term rehab, supported housing, or residence with family or friends. (Dkt. No. 37, Attach. 3.)

While Respondents argue that there is not a reasonable expectation that Petitioner will again be affected by the regulations, the Court respectfully disagrees.  (Dkt. No. 38, at 5.)  Much like the controversy faced by Jones in *Vitek*, the controversy between Petitioner and Respondents here has not been lessened by the return of Petitioner to Oceanview.  Further the Court agrees with Acting Albany County Supreme Court Justice Kimberly A. O'Connor that "Respondents' assertion that [P]etitioner's claimed harm is purely speculative ignores the realities of mental illness, which make the likelihood of the harm alleged more real and possible than not."  (Dkt. No. 1, Attach. 8, at 6.)

> ### c. Commissioner Zucker's Assurance that DOH Will Accommodate Petitioner in the Future

Respondents also argue in their memorandum of law that "Commissioner Zucker has represented, in open court, that the DOH will accommodate Petitioner going forward with respect to the DOH Regulation."  (Dkt. No. 38, at 6.)  However, Respondents do not cite any portion of the record containing such a statement by Commissioner Zucker, and the Court has not come across any such statement in the record.  (*Id.*)

Alternatively, even if the Court were to find such a voluntary statement to have been made by Commissioner Zucker, the Court still would find that the case is not moot.  To prevail on a claim of mootness, Respondents must establish that subsequent events have "made it absolutely clear that the allegedly wrong behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).

The Court finds that, at this juncture, Respondents have failed to meet this heavy burden. Were this Court to dismiss Petitioner's claims regarding the DOH and OMH regulations, other than through the exercise of the burdensome right to recommence litigation, there might be no legal remedy for Petitioner to pursue in the event DOH or OMH (through a change of leadership or policy) later decide not to allow Petitioner to transfer or return to a transitional adult home of his choosing. *See Vermont Right to Life Comm.*, 221 F.3d 376, 382 (2d Cir. 2000) ("The State also argues that VRLC's fear of suit could not possibly be well-founded because the State has no intention of suing VRLC for its activities. While that may be so, there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation.") (collecting cases).

For all of these reasons, the Court finds that Petitioner's claims are not moot.

## 2. Whether Petitioner Lacks Standing to Bring His Claims

After carefully considering the matter, the Court finds that, for the reasons set forth in Respondents' memoranda of law, Respondents' motion to dismiss the claims challenging the OMH regulation for lack of standing should be granted. (Dkt. No. 27, Attach. 1; Dkt. No. 38.) To those reasons, the Court adds the following analysis.

### a. Legal Standard Governing Motions to Dismiss for Lack of Standing

Under Article III of the U.S. Constitution, the jurisdiction of federal courts is limited to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2. "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *Raines v. Byrd*, 521 U.S. 811,

23

818 [1997]). "Article III standing consists of three irreducible elements: (1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 106-07 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 [1992]) (emphasis in original). "These requirements ensure that a plaintiff has a sufficiently personal stake in the outcome of the suit so that the parties are adverse." *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 204 [1962]).

With regard to the first element, "plaintiff must have personally suffered an injury." *Id.* (citing *Lujan*, 504 U.S. at 560 n.1 ["By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."]; *Valley Forge Christian College v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 [1982] ["Art[icle] III requires that the party who invokes the court's authority to show that he personally has suffered some action or threatened injury as a result of the putatively illegal conduct of the defendant."]; *Baker*, 369 U.S. at 204).

The injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. An allegation of future injury may suffice if the threatened injury is "clearly impending," or there is a "'substantial risk' that the harm will occur." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 441 n.5 (2013); *see also Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) ("To establish standing to obtain prospective relief, a plaintiff must show a likelihood that he will be injured in the future.").

"The basic question when standing is at issue is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy' as to warrant his or her invocation of federal-court jurisdiction, and to justify exercise of the court's remedial powers on his or her behalf." *Montgomery v. Cuomo*, 14-CV-6709, 2018 WL 1157171, at *35 (W.D.N.Y. Mar. 5, 2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 [1962]). "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lee v. Bd. of Governors of the Fed. Reserve Sys.,* 118 F.3d 905, 912 (2d Cir. 1997) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 [1972]).

### b. Standing to Challenge an OMH Regulation

In *Montgomery v. Cuomo*, plaintiff gun owners brought an action challenging as unconstitutional (1) the New York Mental Hygiene Law requiring mental-health treatment providers to report to OMH, patients who appeared to pose a threat of serious harm to themselves or others, and (2) the statute requiring that, if such patient has a New York State firearms license, the license be suspended or revoked and that the patient's firearms be seized. *Montgomery v. Cuomo*, 14-CV-6709, 2018 WL 1157171 (W.D.N.Y. Mar. 5, 2018). The district court held that specific plaintiffs lacked standing to challenge Mental Health Law § 9.46 ("MHL"), because they were not affected by MHL § 9.46 and did not show that they are in imminent danger of being affected in the future despite having their pistol permits suspended pursuant to other sections of the MHL. *Montgomery*, 2018 WL 1157171, at *40-41.

Similarly, here, Petitioner is not currently, nor does the Petition allege he was ever, injured as a result of the OMH regulations. In fact, the Petition does not allege that Petitioner has ever been hospitalized, such that his housing would have ever been impacted by the OMH

regulations.  In addition, he adduces no evidence in support of his late-blossoming assertion that he was "recently in" an OMH hospital.  Finally, Petitioner is currently in a transitional adult home.

For all of these reasons, the Court finds that Petitioner lacks standing to challenge the OMH regulation and the causes of action that challenge the OMH regulation should be dismissed without prejudice.

### 3.  Whether the Petition Fails to State a Claim

After carefully considering the matter, the Court finds that, for the reasons set forth in Respondents' memoranda of law, Respondents' motion to dismiss for failure to state a claim should be granted as to Counts Four and Five.  (Dkt. No. 27, Attach. 1; Dkt. No. 38.)  The Court finds that for the reasons set forth in Petitioner's memorandum of law, Respondents' motion to dismiss for failure to state a claim should be denied as to Counts One, Two, Three, and Six. (Dkt. No. 37.)

### a.  Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[3]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding

---

[3]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F.

Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a

plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks

and citations omitted].  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[4]

## b. Counts One (ADA), Two (RA), and Three (FHA)

After carefully considering the matter, the Court finds that, for the reasons set forth in

Petitioner's opposition memorandum of law, Respondents' motion to dismiss for failure to state

a claim with regard to Count One, Two, and Three should be denied. (Dkt. No. 37, Attach. 1.)

To prove that a state regulation violates the ADA, a plaintiff must establish the

following: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from

participation in a public entity's services, programs or activities or was otherwise discriminated

---

[4]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003) (citing 42 U.S.C. § 12132). These requirements apply with equal force to Petitioner's Rehabilitation Act claim. *Hargrave*, 340 F.3d at 35. Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[.]" 42 U.S.C. § 3604(f)(1). "Discrimination is actionable under the ADA and FHA pursuant to one of three distinct theories, including (1) intentional discrimination, or disparate treatment; (2) disparate impact; and (3) failure to make a reasonable accommodation." *Candlehouse, Inc. v. Town of Vestal, N.Y.*, 11-CV-0093, 2013 WL 1867114, at *6 (N.D.N.Y. May 3, 2013) (Peebles, M.J.) (citing *Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 574 [2d Cir. 2003]).

    As stated above in Part I.D. of this Decision and Order, Respondents argue that Petitioner does not allege facts plausibly suggesting a valid claim of discrimination, which is fatal to Counts One, Two and Three. (Dkt. No. 38, at 9-10.) Respondents argue that the challenged DOH regulation does not deny Petitioner meaningful access to an adult home because, "while the DOH Regulations may effectively bar a person with serious mental illness from living in a specific adult home that is in violation of that regulation, that individual is free to seek residence in any of the many other compliant adult homes in New York." (Dkt. No. 27, Attach. 1, at 15.)

For the reasons set forth in Petitioner's opposition memorandum of law, the Court finds that Petitioner sufficiently alleges discrimination.[5] As set forth in *Hargrave v. Vermont*, "[a] program may discriminate on the basis of mental illness if it treats a mentally ill individual in a particular set of circumstances differently than it treats non-mentally ill individuals in the same circumstances." *Hargrave v. Vermont*, 340 F.3d 27, 36-37 (2d Cir. 2003).

The Petition specifically alleges, "The challenged Regulations prohibit the operator of a transitional adult home 'with a certified capacity of eighty or more and a mental health consensus as defined in section 487.13(b)(4) of this Part, of 25 percent or more of the residential population' to 'admit any person whose admission will increase the mental health census of the facility'. *Id* § 487.4(c)." (Dkt. No. 2, at 7.) Further, the Petition alleges, "The prohibition against Petitioner moving back into a transitional adult home is based solely upon the categorization of Petitioner as a person with a serious mental illness." (*Id*. at 8.) Petitioner also states in an affidavit attached to the Petition, "If my disability were purely physical, I could live in Oceanview without violating the law and have the freedom to move out and back in to Oceanview. Before the current regulations were adopted, I did in fact have that freedom." (*Id.* at 37.)

---

[5] The Court disagrees with Petitioner's argument that he sufficiently alleges discrimination because he has a right to choose his preferred care option in light of his needs. (Dkt. No. 37, at 19-20.) This is because it is undisputed that Petitioner could move to a transitional adult home that is compliant with the challenged regulations and has a resident population of less than 25% individuals with SMI. Rather, the Court finds that Petition sufficiently alleges discrimination because, as explained above, the challenged regulations treat Petitioner differently because of his disability.

The allegations contained in the Petition are different from the facts set forth in *CERPAC v. Health & Hosps. Corp.*, cited by Respondents in support of their motion to dismiss. 147 F.3d 165 (2d Cir. 1998). There, a municipal agency decided to close a specialized health care facility that treated children with developmental disabilities. *CERCPAC*, 147 F.3d at 165. The Second Circuit affirmed the dismissal. The district court reasoned that "the Rehabilitation Act and the ADA afford disabled persons only a right to care equal to that made available to non-disabled persons." *Id.* at 167. In addition, the Second Circuit noted, "The closing of the CERC is challenged, not because its absence will deprive disabled children of medical service available to non-disabled children, but because the closing will eliminate or reduce some services needed by disabled children and will inconveniently relocate at Morrisania other services that these children require." *Id.* at 168.

Here, the challenged DOH regulation does not close a facility as did the regulations in *CERCPAC*. Rather, they require that individuals categorized as having a SMI be treated differently than those without that disability. It is not required that Petitioner allege that he was excluded from participation in, or was denied the benefits of, services. The plain language of 42 U.S.C. § 12132 indicates that, to sufficiently allege a cause of action pursuant to the ADA, Petitioner may need only allege that he was subjected to discrimination, which he has. *See generally Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999).

For all of these reasons, Court finds that the Petition sufficiently alleges discrimination.

### c.    Count Four (NYHRL)

After carefully considering the matter, the Court finds that, for the reasons set forth in

Respondents' memoranda of law, Respondents' motion to dismiss for failure to state a claim

with regard to Count Four should be granted.  (Dkt. No. 27, Attach. 1; Dkt. No. 38.)

It is not alleged that New York State owns, leases, manages, is a proprietor of, is a

superintendent of, is an agent of, or is an employee of transitional adult homes.  (Dkt. No. 2.)

Rather, Petitioner seeks to impose liability on the state because New York licenses transitional

adult homes and heavily regulates them.  (Dkt. No. 37, at 22-23.)

The regulation of transitional adult homes by New York State does not covert the state to

an owner, lessee, proprietor, manager, superintendent, agent or employee of any place of

accommodation.  *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358 (1974); *Benjamin

Koeppel*, 85 N.Y.2d 549, 554 (N.Y. 1995); *Southworth v. State*, 47 N.Y.2d 874, 876 (N.Y.

1979).  Moreover, there is no legal basis for this Court to interpret the NYHRL beyond its terms,

which applies strictly to an "owner, lessee, proprietor, manager, superintendent, agent or

employee of any place of public accommodation."  N.Y. Exec. Law § 296(2)(a).

For all of these reasons, the Court finds that, because Petitioner fails to state a claim with

regard to Count Four (the NYHRL violation), Count Four should be dismissed.

### d.    Count Five (Intimate Association)

Petitioner alleges that the challenged regulations violated his right to intimate association

pursuant to the First Amendment of the U.S. Constitution.  (Dkt. No. 2.)  As set forth above in

Part I.D. of this Decision and Order, Respondents argue that this claim should be dismissed

because Petitioner fails to allege any legally protected relationship that has been impeded

because he was unable to live at Oceanview.  (Dkt. No. 27, Attach. 1, at 16-17.)

The U.S. Constitution affords protection to two distinct types of association: "intimate association" and "expressive association."  *City of Dallas v. Stanglin*, 490 U.S. 19, 23-25 (1989). Intimate association is defined as those relationships that may be classified as familial in nature, as involving "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984). Examples of such relationships include the creation and sustenance of a family (*Roberts*, 468 U.S. at 620), marriage (*Zablocki v. Redhail*, 434 U.S. 374 [1978]), the begetting and bearing of children (*Carey v. Population Servs. Int'l*, 431 U.S. 678 [1977]), cohabitation with relatives (*Moore v. E. Cleveland*, 431 U.S. 494 [1977]), and child rearing and education (*Pierce v. Soc'y of Sisters,* 268 U.S. 510 [1925]).

Moreover, the U.S. Constitution protects "certain kinds of highly personal relationships . . . from unjustified interference by the State."  *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618 (1984).  However, the Supreme Court has not defined the "precise boundaries" as to what qualifies as a "highly personal relationship[]" entitled to constitutional protections.  *Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 545 (1987).  The Supreme Court has noted that "[d]etermining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful assessment of where the relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments."  *Roberts*, 468 U.S. at 620 (citing *Ruyon v. McCrary*, 427 U.S. 160, 187-89 [1976]).  The assessment of a relationship includes considering the

35

relationship's "size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." *Stalter v. Orange Cnty.*, 15-CV-5274, 2016 WL 8711397, at *7 (S.D.N.Y. Aug. 5, 2016) (citing *Roberts*, 468 U.S. at 620). Further, "[t]o determine whether certain familial relationships warrant protection, a court must 'assess such factors as cohabitation and the precise degree of kinship." *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 234 (E.D.N.Y. 2014) (quoting *Patel v. Searles*, 305 F.3d 130, 136 [2d Cir. 2002]).

"At the motion to dismiss stage, that assessment [of the relationship's objective characteristics] is necessarily premised upon the description of the relationship in the operative pleadings. Accordingly, the Court looks to the Complaint's description of the relationship between Plaintiff and [the person whom he alleged has a relationship] to determine whether it is the sort of highly personal relationship afforded constitutional protection." *Stalter*, 2016 WL 8711397, at *8.

Here, there is no specific relationship or individual cited by Petitioner with whom he is unable to form or maintain an intimate association with due to the challenged regulations. Rather, Petitioner alleges that the challenged regulations prohibit his ability to "live in a transitional adult home, because he wants to live, congregate and associate with persons with mental illness, where he will not be lonely or isolated, and will have the right to develop intimate friendships with persons who understand and accept him more." (Dkt. No. 2, at 16.) Petitioner also alleges that

> there are as many as 6,000 people with serious mental illness residing in adult homes subject to the Regulations challenged herein. There are thousands more adults with serious mental illness residing in New York State, of which Petitioner is one, who now want to, or might in the future want to, move into what the challenged regulations call a "transitional adult home".

(Dkt. No. 2, at 5.)

36

Even affording the most liberal construction to the allegations contained in the Petition, the Court finds that Petitioner does not allege facts plausibly suggesting that he has an intimate relationship with the more-than 6,000 unnamed individuals who have been diagnosed with a SMI and either currently reside in New York State or may so in the future. Therefore, Count Five of the Petition pursuant to the First Amendment is dismissed.

### e. Count Six (Arbitrary, Capricious, and Irrational)

As stated above in Part I.D. of this Decision and Order, Respondents argue that this Count of the Petition must be dismissed because the challenged regulations were enacted based on reasoned and clearly articulated concerns, within the State's authority, and thus, must be sustained.

It is well settled that the

> standard for judicial review of an administrative regulation is whether the regulation has a rational basis and is not unreasonable, arbitrary or capricious. An administrative agency's exercise of its rule-making powers is accorded a high degree of judicial deference, especially when the agency acts in the area of its particular expertise. Accordingly, the party seeking to nullify such a regulation has the heavy burden of showing that the regulation is unreasonable and unsupported by any evidence.

*Matter of Consolation Nursing Home v. Comm'r of N.Y. State Dept. of Health*, 85 N.Y.2d 326, 331 (N.Y. 1995).

"[N]either the possibility of unfairness in a particular case nor the availability of alternatives to the adopted regulation renders the Secretary's choice invalid." *Friedman v. Heckler*, 765 F.2d 383, 388 (2d Cir. 1985) (citing *Knebel v. Hein*, 429 U.S. 288, 294 [1977]).

It is axiomatic that DOH possesses authority to promulgate regulations governing adult homes. Soc. Servs. Law § 461. The DOH regulation was enacted to further the legislative objective the "Legislature sought to advance when it enacted SSL Section 461(2), under which

the Department of Health and the Offices of the Department of Mental Hygiene are to develop and promulgate standards for the protection of the health and well-being of adult care facility residents with mental disabilities." (Dkt. No. 2, at 23.) Moreover, the DOH regulation sought to address the fact that OMH "has made a clinical determination that while mixed use, larger scale congregate housing is an important and viable form of community living, certain housing settings in which there are a significant number of individuals with serious mental illness are not conducive to the recover or rehabilitation of the residents." (*Id.*)

However, the Complaint alleges facts plausibly suggesting that the regulation categorizes all persons with mental illness alike (without regard to their individual needs, circumstances, conditions or desires) based solely on the label of serious mental illness. (Dkt. No. 2, at ¶¶ 37, 80.c, 80.d.) Moreover, the stated purpose of the DOH regulation (which the Court can, and does, consider as either integral to the Complaint or a matter of which the Court may take judicial notice) raises questions without providing answers, through use of words such as "certain," "significant" and "conducive." As a result, the Court finds that this challenge by Respondents would be more appropriately asserted (and evaluated) through a motion for summary judgment than a motion to dismiss for failure to state a claim.

For all of these reasons, Respondents' motion to dismiss Count Six is denied.

**ACCORDINGLY**, it is

**ORDERED** that Petitioner's motion to remand (Dkt. No. 20) is __**DENIED**__; and it is further

**ORDERED** that Respondents' motion to dismiss Petitioner's Petition (Dkt. No. 27) is **GRANTED** in part and **DENIED** in part, such that (1) Petitioner's claims regarding the OMH regulations are **DISMISSED**, (2) Petitioner's claims regarding the DOH regulation pursuant to the Americans with Disabilities Act (Count One), Rehabilitation Act (Count Two), and Fair Housing Act (Count Three) **SURVIVE** Respondents' motion to dismiss, (3) Petitioner's claims pursuant to the New York State Human Rights Law (Count Four) and the First Amendment of the U.S. Constitution (Count Five) are **DISMISSED**, and (4) Petitioner's claim that the DOH regulation is arbitrary, capricious, and irrational (Count Six) **SURVIVES** Respondents' motion to dismiss;

**ORDERED** that Respondents file an Answer to the Petition within **FOURTEEN (14) DAYS** of the date of this Decision and Order pursuant to Fed. R. Civ. P. Rule 12(a)(4)(a), and that this case is referred back to U.S. Magistrate Judge Christian F. Hummel for a Fed. R. Civ. P. 16 conference and the setting of pretrial scheduling deadlines.

Dated:        July 20, 2018
              Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge