UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,

                               Petitioner,                1:17-CV-1005
                                                          (GTS/CFH)

v.

HOWARD ZUCKER, M.D., in his official capacity
as Commissioner of Health of the State of New York;
and ANNE MARIE T. SULLIVAN, M.D., in her
official capacity as Commissioner of Mental Health
for the State of New York,

                               Respondents,

and

RUTH RIVERA; GEORGE IWCZENKO; and
ERIC SCOFF,

                               Intervener-Respondents.
_____

APPEARANCES:                           OF COUNSEL:

O'CONNELL & ARONOWITZ PC           JEFFREY J. SHERRIN, ESQ.
  Counsel for Petitioner                  DANIELLE E. HOLLEY, ESQ
54 State Street, 9th Floor
Albany, New York 12207-2501

CONSTANTINE CANNON LLP            ROBERT LOUIS BEGLEITER, ESQ.
  Counsel for Respondents              MATTHEW J. KOENIG, ESQ.
336 Madison Avenue, 9th Floor
New York, New York 10017-4611

ARNOLD & PORTER KAYE SCHOLER LLP    GLENN J. POGUST, ESQ.
  Counsel for Intervener-Respondents
250 West 55th Street
New York, New York 10019

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

Currently pending before the Court, in this discrimination action filed by John Doe ("Petitioner") against Howard Zucker, M.D., and Anne Marie T. Sullivan ("Respondents") and Ruth Rivera, George Iwczenko, and Eric Scoff ("Intervener-Respondents") are the following two motions: (1) Petitioner's motion to dismiss the Intervener-Respondents from this action; and (2) Petitioner's motion for a preliminary injunction enjoining enforcement of the challenged regulations. (Dkt. Nos. 64, 65.) For the reasons set forth below, Petitioner's motion to dismiss the Intervener-Respondents is denied and Petitioner's motion for a preliminary injunction is denied.

## I.    RELEVANT BACKGROUND

### A.    Summary of Petitioner's Complaint

On July 20, 2018, this Court issued a Decision and Order granting Respondents' motion to dismiss Petitioner's Complaint in part and denying it in part. (Dkt. No. 51 [Decision and Order filed July 20, 2018].) As a result of that Decision and Order, Petitioner's Fourth and Fifth Claims were dismissed, while his First, Second, Third, and Sixth Claims were permitted to proceed. (*Id.*)

As to the First Claim, Petitioner alleges that the challenged regulations violate the Americans with Disabilities Act ("ADA") by (a) depriving persons of their choice to live in an adult home solely because of their disability, (b) forcing persons with mental disabilities to accept a residence other than the adult home of their choice, and (c) forcing persons with mental disabilities in hospitals, nursing homes, or other shelters to remain in living situations unsuited for them by reason of their mental disability. (Dkt. No. 2, at ¶¶ 51-57 [Pet'r's Compl.].)

Petitioner alleges that he is being denied the benefits of living in housing of his choice and is being discriminated against solely on the basis of his mental disability, and that the regulations force transitional adult homes to discriminate against Petitioner and other similarly situated persons and deny them their choice of living accommodation. (*Id.* at ¶ 56-57.)

As to the Second and Third Claims, Petitioner alleges that the challenged regulations violate the Rehabilitation Act of 1973 and the Fair Housing Act ("FHA") for the same reasons that he alleges the ADA has been violated. (*Id.* at ¶¶ 58-62.)

As to the Sixth Claim, Petitioner alleges that the challenged regulations are arbitrary, capricious, and irrational because they (a) violate the ADA, the Rehabilitation Act of 1973, and the FHA, (b) force transitional adult homes to discriminate against people with mental disabilities, (c) categorize all persons with mental illness alike and deprive them of rights they would otherwise enjoy without regard to their individual needs, circumstances, conditions or desires, and (d) fail to take into account individual needs and preferences. (*Id.* at ¶ 80.)

### B.     Parties' Briefing of Petitioner's Motions

#### 1.     Petitioner's Motion to Dismiss Intervener-Respondents as Parties

##### a.     Petitioner's Memorandum of Law

Generally, in his memorandum of law in support of his motion to dismiss Intervener-Respondents from this action, Petitioner asserts three arguments. (Dkt. No. 64, Attach. 1, at 14-32 [Pet'r's Mem. of Law].) First, Petitioner argues that Intervener-Respondents do not have constitutional standing to participate in this case. (*Id.* at 14-22.) More specifically, Petitioner argues that the Supreme Court held in *Town of Chester N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1652 (2017), that every litigant seeking to intervene under Fed. R. Civ. P. 24 must

demonstrate that it has Article III standing and that Intervener-Respondents cannot establish an injury-in-fact because, as current residents of a transitional adult home, the challenged regulations do not impact their ability to move to supported housing. (*Id.* at 17-18.) Petitioner argues specifically that the challenged regulations do not apply to Intervener-Respondent Rivera because she has already moved out of her adult home and that the challenged regulations would not prevent Intervener-Respondents Iwczeko and Scoff from applying for, or moving to, supported housing. (*Id.* at 18-19.) Petitioner therefore frames Intervener-Respondents' alleged injury-in-fact as being related to the ability to move from a transitional adult home to supported housing and argues that, because nothing (including the challenged regulations) prevents Intervener-Defendants from making such a move, they will not suffer an injury-in-fact if the challenged regulations are enjoined or declared unconstitutional. (*Id.* at 20-21.) Petitioner additionally argues that the finding of standing by the state court does not control this Court's determination of whether there is constitutional Article III standing. (*Id.* at 17.) Alternatively, Petitioner argues that an evidentiary hearing should be held if the Court cannot determine standing on the record. (*Id.* at 21-22.)

Second, Petitioner argues that Intervener-Respondents do not meet the requirements for intervention-as-of-right under Fed. R. Civ. P. 24 for the following four reasons: (a) the motion to intervene was untimely because Intervener-Respondents had been living in transitional adult homes (and therefore were aware of their interests/risks in this case) since 2013 or 2015; (b) the existing parties will be prejudiced by the intervention because it causes (and in fact already has caused, in the form of removal to this Court) delay; (c) Intervener-Respondents will not be prejudiced by being dismissed because the attorneys for Respondents can adequately represent

their interests and, in any event, their rights are not affected by the challenged regulations; and (d) Intervener-Respondents do not have a sufficient interest in the litigation given that the challenged regulations do not affect their right to move into supported housing. (*Id.* at 22-30.)

Third, Petitioner argues that Intervener-Respondents should also not be permitted to intervene pursuant to Fed. R. Civ. P. 24(b) because they have already delayed the proceedings in this case and there is no common question between their interests and the subject of this lawsuit. (*Id.* at 31-32.)

### b. Intervener-Respondents' Opposition Memorandum of Law

Generally, in opposition to Petitioner's motion to dismiss Intervener-Respondents, Intervener-Respondents assert four arguments. (Dkt. No. 75, at 13-32 [Intervener-Resp'ts' Opp'n Mem. of Law].) First, Intervener-Respondents argue that the issues raised in Petitioner's motion have been previously been decided by the state court and should not be relitigated. (*Id.* at 13-16.) More specifically, Intervener-Respondents argue that the law-of-the-case doctrine applies to state court decisions made prior to removal, that there is no compelling reason to revisit the prior ruling that granted Intervener-Respondents' motion to intervene, and that applying the law-of-the-case doctrine would not produce an anomalous result because the test for determining intervention in New York is similar to the requirements for intervention under the Federal Rules of Civil Procedure. (*Id.*)

Second, Intervener-Respondents argue that there is no need to show Article III standing because the Supreme Court indicated in *Town of Chester* that such a showing was needed only where an intervener is seeking more relief than that sought by the original parties, and Intervener-Respondents are seeking the same relief as sought by Respondents: namely, a finding

that the challenged regulations are constitutional and should be upheld. (*Id.* at 16-18.) Nonetheless, Intervener-Respondents argue in the alternative that they have shown that they possess Article III standing. (*Id.* at 18-21.) More specifically, Intervener-Respondents argue that their alleged injury is not related to their right to move to supported housing, but rather to the *de facto* institutionalization of transitional adult homes that could occur if the challenged regulations were enjoined or found to be unconstitutional. (*Id.* at 19-21.) Intervener-Respondents argue that the Supreme Court has mandated that persons with serious mental illnesses be able to live in an integrated setting and that the challenged regulations further the mandate by limiting the number of people with serious mental illness who can live in a transitional adult home, which in turn prevents those homes from becoming *de facto* mental institutions. (*Id.*) Intervener-Respondents also argue that no evidentiary hearing is necessary on this issue. (*Id.* at 21.)

Third, Intervener-Respondents argue that they should be permitted to intervene as a matter of right. (*Id.* at 21-31.) More specifically, Intervener-Respondents argue that (a) the issue of timeliness of their intervention has already been decided by the state court and Petitioner cannot show prejudice by the timing of their intervention because little has occurred in this case other than the entry of the TRO, (b) the parties will not be prejudiced as a result of intervention and the motion to remove the case to this Court did not create a prejudicial delay, (c) Intervener-Respondents have a sufficient interest because the challenged regulations help ensure more integration by limiting the number of persons with serious mental illness who can live in a given transitional adult home, (d) dismissal of Intervener-Respondents as parties would impair their ability to protect their rights and prejudice them because their rights could be adversely impacted

if the challenged regulations were struck down, and (e) Intervener-Respondents have a slightly different interest than does New York State in this matter and therefore the State might not adequately represent their interests, in particular because the State had previously consented to the entry of the TRO that suspended enforcement of the challenged regulations.  (*Id.*)

Fourth, Intervener-Respondents argue that they should also be permitted to intervene because their presence in the lawsuit will not alter the central factual and legal questions at issue and they would suffer the consequences if Petitioner were successful.  (*Id.* at 31-32.)

### c.    Petitioner's Reply Memorandum of Law

Generally, in reply to Intervener-Respondents' opposition, Petitioner asserts four arguments.  (Dkt. No. 78, at 5-14 [Pet'r's Reply Mem. of Law].)  First, Petitioner argues that the law-of-the-case doctrine does not apply because the state and federal standards for intervention differ, and because it is within the discretion of the Court whether to apply the doctrine.  (*Id.* at 5.)

Second, Petitioner argues that Intervener-Respondents do not have Article III standing to intervene.  (*Id.* at 6-10.)  More specifically, Petitioner argues that (a) Intervener-Respondents are pursuing relief that is different from the relief sought by Respondents by reserving their right to take a different position than Respondents, (b) Intervener-Respondents have not suffered an injury-in-fact as the result of being residents of transitional adult homes because there is no evidence that those adult homes have an "institutional" environment and that any such injury would nonetheless not be specific to Intervener-Respondents because all residents with serious mental illnesses would be impacted the same way, and (c) the alleged injury is not redressable because there is no evidence that implementing a cap on the number of persons with serious

mental illnesses allowed in transitional adult homes would improve or ameliorate conditions in those homes. (*Id.* at 6-9.) Petitioner additionally argues that an evidentiary hearing may be needed because Intervener-Respondents have changed their theory in this case since initially seeking to intervene and circumstances suggest that it is the interest of Intervener-Respondents' lawyers (rather than of Intervener-Respondents) that is being pursued through this intervention. (*Id.* at 9-10.)

Third, Petitioner argues that Intervener-Respondents do not meet the requirements to intervene as-of-right. (*Id.* at 10-13.) More specifically, Petitioner argues that (a) Intervener-Respondents' motion was untimely and they have not attempted to justify or acknowledge the delays they have caused, (b) Intervener-Respondents would not be prejudiced by being dismissed from this action because there is no evidence that they have been receiving inadequate care from their transitional adult homes or that those adult homes have become essentially institutionalized, and (c) Intervener-Respondents' interests are adequately represented by Respondents and the Federal Settlement in *United States v. State of New York*, 13-CV-4165 (E.D.N.Y.), and *O'Toole v. Cuomo*, 13-CV-4166 (E.D.N.Y.) ("Federal Settlement"). (*Id.*)

Fourth, Petitioner argues that Intervener-Respondents also do not meet the requirements for permissive intervention because they have already caused a delay in these proceedings and their "purpose in the first place of intervening was to get this case before Judge Garaufis which could not have been more transparent, and it has nothing to do with the Defendants' ability to represent their interests." (*Id.* at 13-14.)

### 2. Petitioner's Motion for a Preliminary Injunction

#### a. Petitioner's Memorandum of Law

Generally, in support of his motion for a preliminary injunction, Petitioner asserts three arguments. (Dkt. No. 65, Attach. 1, at 12-30 [Pet'r's Mem. of Law].) First, Petitioner argues that he will suffer irreparable harm if his motion for a preliminary injunction is denied. (*Id.* at 12-16.) More specifically, Petitioner argues that, now that he is back at Oceanview Manor, he is fearful that, if he attempts to return to supported housing in the future and he fails to live successfully there, he will again be unable to return to Oceanview Manor as a result of the challenged regulations; he argues that this fear is reasonable based on his past failed attempt to live in supported housing. (*Id.* at 12-13.) Petitioner further argues that the Federal Settlement establishes his right to move into supported housing, but that he is unable to avail himself of that right due to his fear of not being able to return to Oceanview Manor should he need to, and that such considerations impact his decision-making and therefore constitute a real and immediate harm. (*Id.* at 13-14.) He also argues that damage to his health that might occur in supported housing also constitutes irreparable harm. (*Id.* at 15-16.) Petitioner lastly argues that there is a presumption of irreparable harm where a petitioner can show likelihood of success on the merits. (*Id.* at 14-15.)

Second, Petitioner argues that he has established a likelihood of success on the merits. (*Id.* at 17-28.) More specifically, Petitioner argues that the challenged regulations violate the ADA, the FHA, and the Rehabilitation Act, and that he has shown a *prima facie* case of discrimination based on mental illness through showing that he is qualified to live in a transitional adult home and has previously been denied the right to move back to Oceanview

Manor as a result of the challenged regulations. (*Id.* at 17-18.) Petitioner also argues that the challenged regulations fail to further any legitimate government interest and are not narrowly tailored because they fail to account for individual circumstances. (*Id.* at 18-20, 24-26.) Petitioner argues that the challenged regulations, although designed to "protect" persons with mental illness, actually put a burden on those persons and force them to stay in settings that are more restrictive than necessary rather than allowing them to choose to move into a transitional adult home. (*Id.* at 22-24.) Petitioner argues that the challenged regulations further violate the Rehabilitation Act specifically because they undermine New York State's legislation governing adult homes by preventing access to housing that has been deemed by the State to be vital to persons who are unable to substantially live independently. (*Id.* at 27-28.) Lastly, Petitioner argues that the challenged regulations are arbitrary, capricious, and irrational because there is no basis for the criteria of the cap (i.e., only 25% or less of persons in an 80-bed facility may be persons with serious mental illnesses) and they fail to take account of individual needs. (*Id.* at 28.)

Third, Petitioner argues that the balance of equities favors granting injunctive relief because people with mental illnesses will be harmed by the challenged regulations, while the State would not suffer any prejudice from an injunction pending the outcome of these proceedings. (*Id.* at 29-30.)

### b.     Respondents' Opposition Memorandum of Law

Generally, in opposition to Petitioner's motion, Respondents assert four arguments. (Dkt. No. 77, at 16-26 [Resp'ts' Opp'n Mem. of Law].) First, Respondents argue that Petitioner has not shown an irreparable injury because his argument is based on contingencies and

possibilities rather than immediate and likely effects (i.e., that if he chooses to leave Oceanview again and then wants to move back if he cannot successfully live in supported housing, he will not be allowed to or he will suffer detrimental health effects from living in supported housing), and therefore his alleged injury is merely speculative rather than actual and immediate.  (*Id.* at 16-18.)  Respondents also argue that, even if there is a presumption of irreparable harm where likelihood of success has been established, such presumption is rebuttable and has been rebutted in this case.  (*Id.* at 18-19.)

Second, Respondents argue that Petitioner has failed to demonstrate a likelihood of success on the merits because (a) other courts have already found the challenged regulations to be legitimate, (b) the challenged regulations further the aims of federal law for integrating persons with mental illness into an inclusive community, (c) the challenged regulations do not prevent persons with mental illness from moving to any adult home that is not considered a transitional adult home, and transitional adult homes constitute less than 9% of all adult homes in the relevant area, (d) the restraint is not imposed based on mental disability, but rather on the transitional adult homes for non-compliance, and (e) other courts have found such percentage limitations to be permissible.  (*Id.* at 19-23.)

Third, Respondents argue that the public interest supports denying the preliminary injunction because the rights of thousands of transitional adult home residents with mental illness outweighs Petitioner's individual interest, and because the injunction would interfere with the State's plan to meet its obligations under federal law.  (*Id.* at 24-25.)  Respondents also argue that, if the preliminary injunction were to be granted, it should be applied only to Petitioner and similarly situated persons, not applied broadly and generally to all.  (*Id.* at 26.)

Fourth, Respondents argue that the Court should also order that the state court's TRO is no longer in effect as a result of its decision on this motion for preliminary injunction.  (*Id.* at 26.)[1]

### c.    Petitioner's Reply Memorandum of Law

Generally, in his reply, Petitioner asserts three arguments.  (Dkt. No. 80, at 5-11 [Pet'r's Reply Mem. of Law].)  First, Petitioner argues that he has shown irreparable injury because (a) his mental illness makes it likely that he would fail if he tried supported housing again and he would need a transitional adult home on Coney Island in the event he could not live in supported housing, (b) the state court found that he was entitled to a TRO, and (c) the presumption of irreparable harm applies.  (*Id.* at 5-7.)

Second, Petitioner argues that he has shown a likelihood of success on the merits because (a) the other lawsuits Respondents point to were Article 78 petitions where the petitioners were not in a similar position as is Petitioner, (b) there is a similar action pending in state court that has not been dismissed for failure to state a claim and this Court's ruling on Respondents' motion to dismiss found the surviving claims were plausibly suggested, (c) Respondents have not shown that the percentage cap is permissible or supported by clinical, scientific, or other evidence.  (*Id.* at 7-10.)

Third, Petitioner argues that the public interest supports granting a preliminary injunction because the evidence shows that 39 people have returned to transitional adult homes since the TRO has been in place, and because there has been no showing that the government's interest has suffered since the state court implemented the TRO.  (*Id.* at 11.)

---

[1]    The Court notes that the TRO was vacated by the Stipulation and Order of October 22, 2018.  (Dkt. No. 74 [Stipulation and Order filed Oct. 22, 2018].)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standards Governing Motions to Intervene

Generally, intervention as of right under Fed. R. Civ. P. 24(a) is granted when all four of the following conditions are met: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006).

Generally, permissive intervention under Fed. R. Civ. P. 24(b) "may be granted when an applicant's claim or defense and the main action have a question of law or fact in common," and when intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 561-62 (2d Cir. 2005); Fed. R. Civ. P. 24(b)(3).

### B.    Legal Standards Governing a Motion for Preliminary Injunction

"A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right . . . ." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted).  Rather, generally, in the Second Circuit, a party seeking a preliminary injunction must establish the following three elements: (1) that the party will likely experience irreparable harm if the preliminary injunction is not issued; (2) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor, or (b) a sufficiently serious

question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; and (3) that the preliminary injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (reciting standard limited to first part of second above-stated element); *accord Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (reciting standard including second part of above-stated element); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (holding that "our venerable standard for assessing a movant's probability of success on the merits remains valid [after the Supreme Court's decision in *Winter*]").

With regard to the first element, "irreparable harm" is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003).

With regard to the second element, "likelihood of success" requires a demonstration of a "better than fifty percent" probability of success. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. *See, e.g., Ligon v. City of New York,* 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing "hardship imposed on one party" and "benefit to the other" as a "balanc[ing] [of] the equities"); *Jones v. Nat'l Conference of Bar Examiners,* 801 F. Supp. 2d 270, 291 (D. Vt. 2011) (considering the harm to plaintiff and any "countervailing benefit" to plaintiff in balancing the equities); *Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 99-CV-9214, 1999 WL

34981557, at *4-5 (S.D.N.Y. Sept. 13, 1999) (considering the harm to defendant and the "benefit" to consumers in balancing the equities); *Arthur v. Assoc. Musicians of Greater New York*, 278 F. Supp. 400, 404 (S.D.N.Y. 1968) (characterizing "balancing the equities" as "requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties"); *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794, 801-02 (S.D.N.Y.1967) (explaining that, in order to "balance the equities," the court "will consider the hardship to the plaintiff . . . , the benefit to [the] plaintiff . . . , and the relative hardship to which a defendant will be subjected") [internal quotation marks omitted].[2]

"A sufficiently serious question as to the merits of the case to make it a fair ground for litigation" means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *accord Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205-06 (2d Cir. 1970).[3] "A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could be held." *Buffalo Courier-Express, Inc. v. Buffalo Evening*

---

[2]  *See also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12, n.2 (7th Cir. 1992) ("Weighing the equities as a whole favors X, making preliminary relief appropriate, even though the *undiscounted* balance of harms favors Y.") [emphasis added].

[3]  *See also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988);  *City of Chanute v. Kansas Gas and Elec. Co.,* 754 F.2d 310, 314 (10th Cir. 1985); *R.R. Yardmasters of Am. v. Penn. R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955).

*News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp. 2d 321, 333-34 (S.D.N.Y. 2009); *see also Semmes Motors, Inc.,* 429 F.2d at 1205 (concluding that the balance of hardships tipped decidedly in favor of the movant where it had demonstrated that, without an injunctive order, it would have been forced out of business as a Ford distributor).[4]

With regard to the third element, a preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *SEC v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012). The "public interest" is defined as "[t]he general welfare of the public that warrants recognition and protection," and/or "[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation." *Black's Law Dictionary* at 1350 (9th ed. 2009).

The Second Circuit recognizes three limited exceptions to the above-stated general standard. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4.

First, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous "serious questions" standard but should grant the injunction only if the moving party establishes,

---

[4] The Court notes that the requirement of a balance of hardships tipping decidedly in the movant's favor is added only to the second part of the second element (i.e., the existence of a sufficiently serious question as to the merits of the case to make it a fair ground for litigation), and not also to the first part of the second element (i.e., the existence of a likelihood of success on the merits), which (again) requires merely a balance of equities (i.e., hardships and benefits) tipping in the movant's favor. *See Citigroup Global Markets, Inc.*, 598 F.3d at 36 ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . , its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (internal citation omitted); *cf. Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 192 (E.D.N.Y. 2013) ("[T]he *Winter* standard . . . requires the balance of equities to tip in the movant's favor, though not necessarily 'decidedly' so, even where the movant is found likely to succeed on the merits.").

along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Id.* (citing *Able v. United States*, 44 F.3d 128, 131 [2d Cir. 1995]); *see also Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) ("A plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme.") (internal quotation marks omitted). This is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able,* 44 F.3d at 131.

Second, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required when the requested injunction (1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to the non-movant on the merits at trial. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 [2d Cir. 2006]); *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("When either condition is met, the movant must show [both] a 'clear' or 'substantial' likelihood of success on the merits . . . *and* make a 'strong showing" of irreparable harm' . . . .") (emphasis added).

Third, the above-described heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the status quo by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the status quo. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).[5] As for the point in time that serves as the status quo, the

---

[5] Alternatively, in such a circumstance, the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs.*, 60 F.3d at 34).

Second Circuit has defined this point in time as "the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F.3d 68, 74, n.7 (2d Cir. 1994); *accord Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014); *Actavis PLC*, 787 F.3d at 650.

## III. ANALYSIS

### A. Whether Intervener-Respondents[6] Should Be Dismissed from this Action

#### 1. Whether Intervener-Respondents Must Establish Article III Standing

After careful consideration, the Court answers the above question in the negative for the reasons stated in Intervener-Respondents' opposition memorandum of law. (Dkt. No. 75, at 16-18 [Intervener-Resp'ts' Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

In *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645 (2017), the Supreme Court held that "an intervener of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester*, 137 S.Ct. at 1651. The Supreme Court rationalized that, "[f]or all relief sought, there must be a litigant with standing," and therefore, an intervener who seeks additional relief beyond what was requested by an existing party must show that it possesses Article III standing. *Id.*; *see also Commonwealth of Pennsylvania v. President, United States of America*, 888 F.3d 52, 57 n.2 (3rd Cir. 2018)

---

[6] The Court notes that Intervener-Respondent Rivera has since moved from her transitional adult home to supported housing; the parties attempted to stipulate her dismissal from this action; but the Court denied their stipulation because it did not contain an indication that none of the parties to this action are an infant or incompetent. (Dkt. Nos. 67, 69.) However, because Intervener-Respondent Rivera's undisputed move to supported housing destroys her interest in seeking to uphold the regulations, the Court finds that she should be dismissed from this action due to an inability to meet the standards for intervention. Consequently, any further references to Intervener-Respondents shall be as to Intervener-Respondents Iwczenko and Scoff only.

(finding that, because intervener-defendants sought the same relief as the defendant, they did not need to demonstrate Article III standing).

Petitioner argues that, by reserving their right to take a "different position" than Respondents, Intervener-Respondents have reserved a right to pursue a different form of relief than Respondents and therefore must demonstrate Article III standing. (Dkt. No. 78, at 6 [Pet'r's Reply Mem. of Law].) This argument ignores the practical realities of this case. The fact that Intervener-Respondents might wish to take a different legal position than Respondents during the course of litigation does not negate the fact that both Respondents and Intervener-Respondents seek the same overall *relief*: a decision from this Court that the challenged regulations are not arbitrary and capricious or violative of federal law. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liabilit Litig.*, 894 F.3d 1030, 1044 (9th Cir. 2018) (finding that the numerous declarations sought by the intervener constituted a form of relief that was completely different from the permanent injunction sought by the government). There is simply nothing in the submitted evidence that would indicate that Intervener-Respondents are seeking any additional relief beyond that which is being sought by Respondents, and Petitioner does not even concretely identify any such additional relief in its briefing. Consequently, the Court finds that Intervener-Respondents need not demonstrate Article III standing in order to be entitled to intervene in this litigation.

### 2. Whether the Law-of-the-Case Doctrine Should Be Applied

After careful consideration, the Court answers this question in the negative for the following reasons.

The Court finds that, even if the law-of-the-case doctrine can be applied to state court decisions made before removal, it should not be applied in this case because the state court did not apply the same legal standard that this Court is required to apply for determining whether intervention is appropriate. Specifically, in its Order, the state court indicated that it granted Intervener-Respondents' motion to intervene pursuant to N.Y. C.P.L.R. § 7802(d), which requires merely that a person must be "interested" to intervene. (Dkt. No. 75, Attach. 13, at 2.) By contrast, Fed. R. Civ. P. 24(a) requires an intervener to (a) claim an interest relating to the subject of the action, and (b) show that disposing of the action without the intervener would impair or impede its ability to protect its interest as a practical matter, unless the existing parties could adequately represent that interest, while Fed. R. Civ. P. 24(b) requires that a person seeking to permissively intervene must have a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(a); Fed. R. Civ. P. 24(b). Although Intervener-Respondents argue that this is the same legal standard, the Court finds that intervention as-of-right requires additional findings beyond whether the intervening party has an interest in the litigation, and that potential differences in how the terms "interested" and "common question of law or fact" may be interpreted by state and federal courts indicate that the state and federal standards are not sufficiently alike to warrant the adoption of the state court's finding as to intervention. Therefore, the Court will examine whether Intervener-Respondents meet the specific federal standards for intervention.

### 3. Whether Intervener-Respondents May Intervene by Right Under Fed. R. Civ. P. 24(a)

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Intervener-Respondents' opposition memorandum of law. (Dkt. No. 75, at 21-

30 [Intervener-Resp'ts' Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

As discussed above in Part II of this Decision and Order, a movant must be allowed to intervene in the following circumstances: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc.*, 471 F.3d at 389.

First, the Court finds that Intervener-Respondents' motion to intervene was timely.  The Second Circuit has instructed that, when determining whether a motion to intervene was timely, courts should consider (a) the length of time the movant knew or should have known of his interest before making the motion, (b) prejudice to the parties resulting from the movant's delay, (c) prejudice to the movant if the motion is denied, and (d) the presence of any unusual circumstances mitigating for or against a finding of timeliness.  *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Markets*, 847 F.2d 1038, 1043-44 (2d Cir. 1988).  According to Petitioner's own summary of the relevant facts, Petitioner commenced the original Article 78 proceeding in the New York Supreme Court in November 2016, the state court issued the TRO preventing enforcement of the challenged regulations on February 16, 2017, and Intervener-Respondents filed their motion to intervene on June 27, 2017.  (Dkt. No. 64, Attach. 1, at 8 [Pet'r's Mem. of Law].)  Although the current challenge to the regulations did not occur until November 2016, Petitioner inexplicably, and without support, argues that the Intervener-Respondents should be found to have known of their interest in this litigation at the time they

moved into a transitional adult home as early as 2013 and 2015. (Dkt. No. 64, Attach. 1, at 24 [Pet'r's Mem. of Law].) Given that the earliest Intervener-Respondents could have known of their interests in this litigation was November 2016, and that the TRO enjoining those challenged regulations was not issued until February 2017, the Court finds that the motion to intervene in June 2017 was not filed an excessive time after when Intervener-Respondents knew or should have known of their interest in this case. Nor does Petitioner persuasively argue that the small delay of a few months in filing the motion to intervene prejudiced the parties given that little has yet occurred in this litigation; the mere fact that a delay has occurred does not make that delay prejudicial. Additionally, it is more likely that Intervener-Respondents would be prejudiced if they were dismissed from this action, given that a ruling striking down the challenged regulations as arbitrary and capricious would impact not only Petitioner's rights but the rights of all persons with a serious mental illness who live in a transitional adult home, including the Intervener-Respondents. By allowing them to remain in this action, the Court ensures that their demonstrated rights and interests are represented where the outcome may have such far-reaching effects.

Petitioner's attempts to argue that Intervener-Respondents should not be permitted to intervene because they delayed the litigation by removing it to this Court for the purposes getting this case before U.S. District Judge Garaufis are unavailing in the face of both Intervener-Respondents' demonstrated interest and the fact that Intervener-Respondents ultimately decided against filing a motion change venue to the Eastern District of New York. (Dkt. No. 62.) The Court also notes that, while Intervener-Respondents were choosing whether to file such a motion, the other practical matters of this case proceeded, including this Court issuing a Decision

and Order on Petitioner's motion to remand and Respondents' motion to dismiss. (Dkt. No. 51 [Decision and Order filed July 20, 2018].) Additionally, Petitioner's attempt to argue that Intervener-Respondents have changed their rationale for intervening since the state court's decision ignores the fact that Intervener-Respondents' counsel in fact did raise the institutionalization of transitional adult homes as a concern during the oral argument preceding the state court's ruling granting the motion to intervene. (Dkt. No. 76, Attach. 12, at 6-7.) The only way in which Intervener-Respondents have delayed proceedings thus far is by removing the case to this Court, something that they were legally permitted to do; the Court can find no indication that Intervener-Respondents have acted in any way inappropriately. Again, not every action that causes a lawsuit to take longer than expected constitutes a prejudicial delay. The Court also sees no indication at this point in time that allowing Intervener-Respondents to remain in this action would result in future undue delay or prejudice to the rights of the original parties.

Second, the Court finds that Intervener-Respondents have an interest in the subject of this litigation. As discussed above and in Intervener-Respondents' opposition memorandum of law, Intervener-Respondents are persons with serious mental illnesses who reside in transitional adult homes and therefore would be impacted by implementation of the challenged regulations.

Third, the Court finds that, if Intervener-Respondents were not permitted to intervene, they might be impaired from protecting their interests, which the original parties to this action would not adequately represent. As to impairment of their interests, a ruling in this action that the challenged regulations are arbitrary and capricious would impact Intervener-Respondents and deprive them of any recourse to otherwise challenge such a determination. As to protection of their interests, the Court is not wholly convinced that the Respondents will always adequately

represent Intervener-Respondents' interests because, as Intervener-Respondents note, Respondents consented to the TRO that enjoined enforcement of the very challenged regulations that Intervener-Respondents seek to have upheld and fully implemented. Even though Respondents and Intervener-Respondents seek the same ultimate relief, their interests remain different enough that Respondents might not adequately represent their unique interests.

Based on the above, the Court finds that Intervener-Respondents meet the federal standard for intervention as-of-right; Petitioner's motion to dismiss them from this action is therefore denied.[7]

### B.    Whether Petitioner Has Shown Entitlement to a Preliminary Injunction

After careful consideration, the Court answers this question in the negative for the reasons stated in Respondents' opposition memorandum of law. (Dkt. No. 77, at 16-19 [Resp'ts' Opp'n Mem. of Law].) To those reasons the Court adds the following analysis.

As discussed above in Part II of this Decision and Order, in order to be entitled to a preliminary injunction, the moving party must establish irreparable harm, likelihood of success on the merits of his claim or a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor, and that the preliminary injunction is in the public interest. Therefore, where the moving party is unable to establish any one of these factors, a preliminary injunction is not warranted.

---

[7]    Because the Court has found that Intervener-Respondents may intervene as-of-right, the Court need not determine whether they may permissively intervene under Fed. R. Civ. P. 24(b). However, the Court notes briefly that their assertions share a common question of law or fact with Petitioner's action and their intervention would not cause prejudice to the parties; therefore the Court would permit them to intervene even if they were not entitled to intervene as-of-right.

Here, the Court finds that the first factor of irreparable harm has not been established. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Forest City Daly Housing, Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999). The harm alleged must therefore be more than a mere possibility; rather, it must be likely to occur in the absence of a preliminary injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (noting that the standard for preliminary injunction requires a plaintiff to demonstrate that irreparable injury is likely rather than merely possible); *Hester Indus., Inc. v. Tyson Foods, Inc.*, 882 F. Supp. 276, 276 (N.D.N.Y. 1995) (McAvoy, C.J.) ("The party seeking preliminary injunctive relief must show more than a mere possibility of irreparable harm, but rather must show that such irreparable harm is likely if injunctive relief is denied.").

Petitioner specifically argues that there are two bases for a finding of irreparable harm: (1) his fear that, should he leave Oceanview Manor (where he currently resides as a result of the state court's TRO in this litigation) to attempt to live in supported housing again and that attempt were unsuccessful, he would not be permitted to move back into Oceanview Manor if the challenged regulations were in effect; and (2) the potential damage to his health if his attempt to live in supported housing were unsuccessful and he were not permitted to return to Oceanview Manor or another transitional adult home. (Dkt. No. 65, Attach. 1, at 12-16 [Pet'r's Mem. of Law].) In particular, Petitioner argues that his fears of failing supported housing and being unable to return to Oceanview Manor are reasonable based on his previous experience living in supported housing. (*Id.* at 12.)

However, mere fear of a possible occurrence are not sufficient to establish irreparable harm; this includes when such fear is based on past conduct or experiences. *See Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434 (E.D.N.Y. 2018) (finding that a possibility of deportation if the subject program was rescinded was not sufficiently likely to merit a finding of irreparable harm); *Trowell v. Upstate Corr. Facility*, 16-CV-0639, 2016 WL 7156559, at *8 (N.D.N.Y. Dec. 7, 2016) (D'Agostino, J.) (finding that irreparable harm was not established by citation to past conduct against the plaintiff that caused a fear of future assaults because such fear that more assaults would occur was merely speculative). It cannot be doubted that it is possible that Petitioner could find supported housing to be too much for him and wish to move back to a transitional adult home. However, the relevant question is not whether such an occurrence is possible, but rather whether it is likely. The Court finds that, at this stage, with Petitioner currently residing in Oceanview Manor (which, it should be remembered, was his ultimate goal when he initially filed this litigation), such possibility is too remote, speculative, and based on too many contingencies to be considered likely for the purposes of a preliminary injunction.

Petitioner's argument that his situation is similar to that in *Step By Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112 (N.D.N.Y. 2016) (Hurd, J.), is unavailing. In *Step By Step*, this Court found that irreparable harm existed because the organizational plaintiff in that case was being deprived of the ability to provide its mentally ill clients with shelter, programs, and services, a deprivation that was already ongoing: the Court noted that, due to the financial constraints caused by the alleged wrongful conduct, the plaintiff had needed to eliminate its breakfast program for clients as well as a program coordinator position that served those clients. *Step By Step*, 176 F. Supp. 3d at 134. Here, Petitioner is not being deprived of services or

shelter; he currently resides in Oceanview Manor (where he does not allege the services are inadequate), and he has the option to move into supported housing in accordance with the Federal Settlement. Nor is he suffering the feared harm at the current time; rather the harm is contingent on both his moving out of Oceanview Manor into supported housing *and* failing at living in that supported housing. Because Petitioner has not demonstrated that the harm alleged is actually occurring already as a result of the challenged regulations, *Step By Step* is inapposite.

Moreover, Petitioner offers no argument (other than his preference for a location on Coney Island because that is the area with which he is familiar, which assists his ability to function) as to why, should he find that supported housing is not suitable for him, he could not move into any of the other adult homes that are not classified as transitional adult homes (and which are not subject to the challenged regulations). Respondents argue in their opposition memorandum of law that less than 9% (specifically, 36 out of 403) adult homes are classified as transitional adult homes. (Dkt. No. 77, at 22 [Resp'ts Opp'n Mem. of Law].) The Court is therefore not convinced that Petitioner would be stuck between the proverbial rock and a hard place by having to remain in inadequate supported housing, enter a hospital or institutional setting, or become homeless should the contingencies he fears come to pass.

Petitioner also argues that this Court should find that there is a presumption of irreparable harm if it finds that Petitioner has demonstrated a likelihood of success on the merits of his claim under the FHA. (Dkt. No. 65, Attach. 1, at 14-15 [Pet'r's Mem. of Law].) However, the Second Circuit has never explicitly decided whether such presumption exists in this circuit. *See Fair Housing in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 365 n.4 (2d Cir. 2003) (acknowledging that other circuit courts have recognized this presumption but declining to

decide the issue); *accord*, *Forest City Daly Housing, Inc. v. Town of N. Hempstead*, 175 F.3d

144, 153 (2d Cir. 1999). Additionally, Petitioner acknowledges that, even if the presumption

were applicable, it is rebuttable. (Dkt. No. 65, Attach. 1, at 14 [Pet'r's Mem. of Law].) *See also*

*Stewart B. McKinney Foundation, Inc. v. Town Plan and Zoning Comm'n of Town of Fairfield*,

790 F. Supp. 1197, 1208 (D. Conn. 1992) (applying the presumption of irreparable harm where a

likelihood of success on the merits was shown, but acknowledging that such presumption could

be rebutted if the defendant demonstrated that the injury was not irreparable). Here,

Respondents have argued extensively that the alleged harm is too remote and speculative to

constitute an "actual and imminent" harm. (Dkt. No. 77, at 16-18 [Resp'ts' Opp'n Mem. of

Law].) As discussed above, the Court is convinced by these arguments after considering the

evidence presented. Therefore, even if the Court were to find that this presumption applied and

that Petitioner had demonstrated a likelihood of success on the merits of his claims, the Court

would find that Respondents had sufficiently rebutted that presumption by showing that there

was no irreparable harm.

Because Petitioner has not shown that he has suffered or will suffer irreparable harm if

the Court does not intervene, the Court denies Petitioner's motion for a preliminary injunction.[8]

**ACCORDINGLY**, it is

**ORDERED** that Petitioner's motion to dismiss the Intervener-Respondents (Dkt. No. 64)

is **DENIED**, except as to Intervener-Respondent Rivera, who is **DISMISSED** from this action;

and it is further

---

[8] Because the Court finds that Petitioner has not shown irreparable injury, the Court
need not, and does not, address whether Petitioner has shown a likelihood of success or whether
the public interest weighs in favor of a preliminary injunction.

**ORDERED** that Petitioner's motion for a preliminary injunction (Dkt. No. 65) is

**DENIED**; and it is further

**ORDERED** that this case is referred back to Magistrate Judge Hummel for the

scheduling of a Rule 16 conference and the setting of pretrial scheduling deadlines.

Dated: January 4, 2019
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge