UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,

                                          Plaintiff,

        v.                                                      1:17-CV-1005
                                                                     (GTS/CFH)

HOWARD ZUCKER, M.D.,

                                          Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

O'CONNELL, ARONOWITZ LAW FIRM     JEFFREY J. SHERRIN, ESQ.
54 State Street, 9th Floor
Albany, New York 12207-2501
Attorneys for plaintiff

CONSTANTINE, CANNON LAW FIRM      ROBERT LOUIS BEGLEITER, ESQ.
335 Madison Avenue, 9th Floor
New York, New York 10017-4611
Attorneys for defendants

ARNOLD & PORTER KAYE SCHOLER LLP  ANGELA VICARI, ESQ.
250 West 55th Street
New York, New York 10019
Attorneys for proposed intervenor-respondents

**MEMORANDUM-DECISION & ORDER**

      Presently pending before the Court is a Motion to Intervene filed pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 24(a)(2) on behalf of proposed intervenor-respondents Lauren Berghorn and Diana Vila . Dkt. Nos. 120-122. For the following reasons, the Motion to Intervene is granted.

## I. Background

Before this matter was transferred from state court, three intervenor-respondents – Ruth Rivera, Eric Scoff, and George Iwczenko ("original intervenors") – were permitted to intervene. On September 27, 2018, petitioner filed a motion to dismiss the original intervenor-respondents from the action. Dkt. No. 64. On October 29, 2018, the original intervenor-respondents opposed petitioner's motion. Dkt. No. 75. On November 12, 2018, petitioner filed a reply. Dkt. Nos. 78-81. On January 4, 2019, the Court denied petitioner's Motion to Dismiss the original intervenors, except that intervenor-respondent Rivera was dismissed from the action by stipulation. Dkt. No. 81. In so holding, the Court ruled, as relevant here, that the original intervenors could intervene as of right under Rule 24(a) as (1) the motion to intervene was timely; (2) the intervenors have an interest in the subject matter of the litigation as they "are persons with serious mental illness who reside in transitional adult homes and therefore would be impacted by implementation of the challenged regulations; and (3) if the intervenors were not permitted to intervene, "they might be impaired from protecting their interests, which the original parties to this action would not adequately represent." Dkt. No. 81 at 22-24. Since the issuance of that Decision, intervenors Rivera and Scott withdrew from this action as they transitioned from adult homes to supportive housing, and intervenor Iwczenko was withdrawn from the action due to his failure to participate. Dkt. Nos. 103, 108, 110.

## II. Legal Standard

As this Court has previously set forth at length, motions to intervene are governed by Fed. R. Civ. P. 24(a). In their motion to intervene, the proposed intervenor-respondents specifically invoke Rule 24(a)(2) and seek to intervene as of right.

> Generally, intervention as of right under Fed. R. Civ. P. 24(a) is granted when all four of the following conditions are met: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006). Generally, permissive intervention under Fed. R. Civ. P. 24(b) "may be granted when an applicant's claim or defense and the main action have a question of law or fact in common," and when intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561-62 (2d Cir. 2005); FED. R. CIV. P. 24(b)(3).

Dkt. No. 81 at 13. "The burden is on the individual seeking to intervene to show that their interests are not adequately represented by the existing parties to the case." Hoblock v. Albany Cty. Bd. of Elections, 233 F.R.D. 95, 97 (N.D.N.Y. 2005) (citing United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir.1994)).

Further,

> The Second Circuit has instructed that, when determining whether a motion to intervene was timely, courts should consider (a) the length of time the movant knew or should have known of his interest before making the motion, (b) prejudice to the parties resulting from the movant's delay, (c) prejudice to the movant if the motion is denied, and (d) the presence of any unusual circumstances mitigating for or against a finding of timeliness. Farmland Dairies v. Comm'r

3

of N.Y. State Dep't of Agric. & Markets, 847 F.2d 1038,
1043-44 (2d Cir. 1988).

Dkt. No. 81 at 21. "A district court of the United States is vested with broad discretion to decide both the timeliness of a motion for intervention . . . ." Holblock, 233 F.R.D. at 98. "Indeed, '[a] district court has broad discretion in assessing the timeliness of a motion to intervene, which "defies precise definition.' The Court also has considerable discretion when considering a motion to intervene as of right, since the Second Circuit Court of Appeals reviews determinations as to motions for intervention under the abuse of discretion standard." Holblock, 233 F.R.D. at 98 (quoting Union Switch & Signal, Inc. v. St. Paul Fire and Marine Ins. Co., 226 F.R.D. 485, 488 (S.D.N.Y.2005) (additional citations and internal quotation marks omitted)).

### III. Discussion

### A. Arguments

Proposed intervenor-respondents Berhorn and Vila argue that they must be permitted to intervene "[t]o ensure that the interests of persons who reside in transitional adult homes will continue to be protected[.]" Dkt. No. 122 at 3. The proposed intervenor-respondents provide that they currently reside in privately-owned adult homes in Brooklyn and Queens, respectively. Id. at 5. They support the regulations "because they prevent their transitional homes, as well as other similar adult homes, from accepting new residents with serious mental illness so long as those homes already have a sufficient high number of residents with mental illness, in

4

violation of the ADA's mandate of integration." Id.  The proposed intervenor-respondents aver that they "'seek opportunities to socializ[e] with a diverse group of residents, engage in productive activities, and participate more fully in an integrated environment that reflects the community at large.'" Id. at 6.  The proposed intervenor-respondents first argue that their motion to intervene is timely as it "is being filed in accordance with the timeliness set by this Court. . . . [p]ursuant to an agreed-upon extension . . . to add new parties[.]" Id. at 7.  Further, proposed intervenor-respondents argue that they timely submitted their motion in accordance with the deadlines set at the pre-motion conference.  Id.  The proposed intervenor-respondents argue further that their intervention would not cause petitioner prejudice.  Id.  Instead, they contend that they "effectively seek to substitute for the Original Intervenors, two of whom could no longer be intervenors because they moved from traditional adult homes to supported housing."  Id. at 8.  The proposed intervenor-respondents contend further that their argument is supported by the status of the case at the time they filed their motion: "[a]lthough document discovery is underway, no depositions have been taken or scheduled to date and discovery is not set to close until January 31, 2020." Id.

Next, the proposed intervenor-respondents assert that they have a sufficient interest in the subject matter of the action and that their interest is the same as the original intervenors, for whom the Court concluded there was a sufficient interest.  Dkt. No. 122 at 8-9.  Specifically, they argue that because the challenged regulations "limit the admission of persons with serious mental illness into impacted adult homes to avoid worsening the degree to which adult homes are de facto psychiatric institutions . . . . As

5

long as the [proposed intervenor-respondents] continue to resident in an adult home, they have an interest in – and a right to – live and receive services in an integrated setting." Id. at 9.

Next, the proposed intervenor-respondents argue that the third factor applies as well because this action may impair/impede their ability to protect their interests. Dkt. No. 122 at 9. The proposed intervenor-respondents reference this Court's conclusion that "a ruling in this action that the challenged regulations are arbitrary and capricious would impact [the Original Intervenors] and deprive them of any recourse to otherwise challenge such a determination." Id. (citing dkt. no. 81 at 23). The proposed intervenor-respondents argue that any decision in this action could "severely diminish or eliminate the Intervenors' ability to defend the Regulations and to secure their rights under the ADA to receive their public services in the most integrated setting appropriate to their needs." Id. at 10. Additionally, the proposed intervenor-respondents contend that they "stand to be personally harmed if the Regulations are nullified" as that would result in "the dismantling of a key component of Respondents' apparatus for meeting the Olmstead mandate, and the limitation on the unfettered admission of residents with serious mental illness into adult homes will be swept away[.]" Id.

Next, the proposed intervenor-respondents contend that their interests are not adequately represented by the existing parties. Dkt. No. 122 at 10. The proposed intervenor-respondents again point to this Court's January 4, 2019 decision noting that it was "not wholly convinced" that the existing parties could adequately represent the original intervenors' interests" and argue that [n]othing has changed since the Court

6

issued the Order." Id. at 10-11. More specifically, proposed intervenor-respondents note that respondents "did previously stipulate to a TRO that suspended the protections of the Regulations – very much to the detriment of the Original and Proposed intervenors." Id. at 11. Further, they argue, "[t]here is no guarantee that, notwithstanding their current efforts, Respondents will continue to take positions intended to enforce the Regulations in a manner that effectively preserves the Olmstead protections afforded to the residents of adult homes with serious mental illness." Id.

In response, petitioner contends that the fact that the state court granted the original intervenors' motion to intervene and that the Court denied the motion to dismiss the original intervenors is not dispositive as to whether the proposed intervenor-respondents' motion should be granted. Dkt. No. 127 at 11. Petitioner argues that proposed intervenor-respondents' motion is untimely. Whereas the original intervenors joined the case in August 2017, when the matter was before the State Supreme Court, the proposed intervenor-respondents sought to intervene in May 2019. Id. at 9-10. Petitioner argues that, unlike with the original intervenor-respondents, who intervened when "'little ha[d] yet occurred in this litigation,' the action has progressed and is now well into active discovery." Id. at 11 (citing dkt. no. 81 at 22). Petitioner contends that the proposed intervenor-respondents knew or should have known of their interest long before they moved to intervene – that proposed intervenor-respondent Berghorn knew by July 2018, when she moved into an adult home, and Vila by September 2014, when she sought to intervene in a related case. Id. at 13. Petitioner also contends that even

7

if the proposed-intervenor respondents assert that they were unaware of the litigation, knowledge can still be imputed.  Id. at 14.  Further, petitioner argues that there is no good cause for the delay.  Id.

Next, petitioner contends that he would be prejudiced by the intervention.  Dkt. No. 127 at 15.  To grant the motion, petitioner argues, would result in additional discovery and delay, as such is demonstrated by counsel's past actions with the original intervenors and the possibility that the proposed-intervenor respondents will eventually withdraw should their circumstances change, which is likely due to the proposed-intervenor respondents' expressed desire to leave their adult home settings.  Id. at 17-18.

Petitioner further asserts that the proposed-intervenor respondents' interests do not justify intervention.  Dkt. No. 127 at 18.  Petitioner argues that the proposed-intervenor respondents' desires have "evolved" from seeking to move out of her adult residence and newly assert that they have an issue with the 'high number of residents with serious mental illness'" in their adult homes.  Id. at 19.  Insofar as the proposed-intervenor respondents express that this action could prevent them from moving out of their adult homes under the terms of the Federal Settlement agreement, "those rights are not implicated by this litigation" as the "Challenged Regulations are not needed to give effect to the Federal Settlement."  Id. at 20-21.  Further, the regulations "bar[] certain persons from moving into adult homes, while the Federal Settlement aims to benefit adult home residents who wish to move out."  Id. at 21.  Thus, petitioner argues that the State's obligations under the federal settlement "are clearly unaffected by any

8

outcome of this proceeding or other pending state actions challenging the Department of Health regulations." Id. Petitioner also argues that the proposed intervenor-respondents' "purported interest consist mostly of nonspecific, conclusory language that relies on a string of inferences based on negative stereotypes about persons with serious mental illness" and that their allegations that the regulations "would protect their right to live with 'a more diverse group of residents who are not all equally challenged with mental illness,'" the proposed intervenor-respondents 'have been free to exercise this right at any time by simply moving to a different adult home or into supportive housing." Dkt. No. 127 at 22. Thus, petitioner suggests, this "mismatch between Proposed Intervenors' purported interests and their action suggests that a litigation agenda driven not by the intervenors, but by attorneys who sought out clients and created boilerplate affidavits for the Proposed Intervenors to endorse." Id. at 22-23.

Next, petitioner asserts that the proposed intervenor-respondents' interests are adequately represented as they "do not state what they could or would do differently from, or in addition to, the State's participation" and do not "explain why the Respondent is not capable to defending the Challenged Regulations that the State has promulgated." Dkt. No. 127 at 23. Petitioner avers that differing motives or "litigation tactics" between respondent and proposed intervenor-respondents does not mean inadequately represented interests as the sought outcome is the same. Id. Further, petitioner argues that any interest the proposed intervenor-respondents have in protecting their rights under the federal settlement "are not implicated by this litigation" and "fully protected by O'Toole and the measures already in place to ensure that the

9

mandates of the Federal Settlement are carried out by the State." Id. at 24.

Finally, petitioner urges the Court, if it were to grant the motion to intervene, to first "order discovery and/or an evidentiary hearing to determine Proposed Intervenors' actual interests in this litigation" as "there is reason to believe that this intervention is being driven by counsel." Dkt. No. 127 at 25.  Petitioner contends that discovery "should be conducted to explore the veracity of Proposed Intervenors' allegations regarding their physical, medical, and mental health circumstances, their suitability for transitioning to supported housing, and their reasons for continuing to reside in their adult homes." Id.  In so urging, petitioner points to "the way that Proposed Intervenors' asserted interests and participation in this litigation have apparently been shaped by counsel[,]" and argue that such discovery would help to "avoid a repeat of the role played by Original Intervenors" and "further waste of resources." Id. at 26.

In reply, the proposed intervenor-respondents again argue that timeliness is not an issue in this case because the motion was submitted within the confines set by the Court.  Dkt. No. 132 at 3.  Proposed intervenor-respondents suggest an intent by petitioner's counsel "to leave the Proposed Intervenors' interests unprotected and make the voice of Mr. Doe, a former adult home resident, the only voice that is heard." Id.  Further, the proposed intervenor-respondents repeat that petitioner would not be prejudiced because of the early stages of discovery at the time they filed their motion. Id. at 4-5.  Finally, proposed intervenor-respondents argue against an evidentiary hearing, contending that it would "put[] the proverbial cart before to horse" and if the motion were granted, they will participate in discovery as required by the Federal Rules.

10

Id. at 7.

**B. Analysis**

Petitioner repeats many of arguments that he presented in his motion to dismiss the original intervenors: (1) because the regulations do not prevent the original intervenors to move from transitional adult homes to supported housing, they will not suffer an injury-in-fact if the challenged regulations are enjoined or declared unconstitutional; (2) the motion was untimely because the original intervenors has long known about their interests in this case as they had been residents in transitional adult homes for years; (3) petitioner will be prejudiced due to delay caused by an intervention of new persons; (4) respondents can adequately represent the original intervenors' interests; (5) the original intervenors do not have a sufficient interest in the litigation because the regulations do not impact their right to move into supported housing; and (6) the original intervenors' changing theories in the case since originally seeking to intervene suggest it is the interest of the original intervenors' lawyers, not the intervenors, to pursue this litigation. See Dkt. No. 81 at 4-5, 8; Dkt. No. 122; Dkt. No. 132.

In the January 4, 2019 Decision & Order, the Court held that the original intervenor-respondents could be said to have known, or that they should have known, about their interest in this litigation in November 2016, when the current challenge to these regulations occurred, or in February 2017, when the temporary restraining order "TRO") was issued enjoining the regulations. Dkt. No. 81 at 22. As the original

11

intervenors sought to intervene in June 2017, the Court held that the request to intervene "was not filed an excessive time after when [the original intervenors] knew or should have known of their interest in this case." Id. Proposed intervenor-respondents now argue, as noted above, that because they filed their motion within the deadline set by the Court and agreed upon by petitioner, it cannot be said that the motion is untimely. Dkt. No. 132 at 3 (Arguing that petitioner "cannot[] dispute the timeliness of this Motion under the schedule for this action."). Further, they point out that, at the time the filed the motion to intervene, discovery was at its early stages. See Dkt. No. 120.

Here, the proposed intervenor-respondents filed the motion to intervene on June 3, 2019, two years and seven months after the petition was filed in state court, and two years and four months after the TRO was issued. This is a far greater period of time than with the original intervenor-respondents, who sought to intervene approximately seven months after the action was commenced and just four months after the TRO was issued. See Dkt. No. 81 at 22. Further, as petitioner argues, proposed intervenor-respondent Vila "unquestionably had knowledge of her interests due to her participation in the Residents & Families litigation in which she was represented by the same counsel who represent Original & Proposed Intervenors in this case." Dkt. No. 127 at 14. That the motion to intervene was filed within the Court's deadline for joinder of parties does not, alone, warrant a conclusion that the motion is timely. See, e.g., Beam v. HSBC Band USA, No. 02-CV-0682E(SR), 2004 WL 944522, at *1 (W.D.N.Y. Mar. 30, 2004) ("Determining whether a motion to intervene is timely is determined from the totality of the circumstances and is within the sound discretion of the trial judge.")

12

(citation omitted).

Applying the standard previously applied by this Court in its January 2019 Decision, the proposed intervenor-respondents knew, or can be presumed to know, of the action at the time it was commenced in November 2016, or, at the latest by February 2017, at the time the TRO was entered. Both proposed intervenor-respondents were living in their current residences by that time, and proposed intervenor-respondent Villa was long-engaged in related litigation. Thus, although proposed-intervenor respondents' motion to intervene was filed within the deadlines set by this Court, it cannot be said the motion is truly timely given the long history of this case and the proposed intervenor-respondents' knowledge (or imputed knowledge) of their interest in this litigation. Consequently, this factor weighs largely in favor of denial. See, e.g., Beam, 2004 WL 944522, at *1 (finding the motion to intervene to be untimely where the party seeking to intervene had notice of the action the months before filing the motion to intervene, and the matter was highly publicized, leading the Court to conclude that the proposed intervenor had constructive notice fifteen months before seeking to intervene) (citing Jones v. Richter, 97-CV-0291E(M), 2001 WL 392079, at *1 (W.D.N.Y. 2001) (affirming denial of motion to intervene as untimely where it was filed more than two years after the action was commenced) and United States v. Pitney Bowes Inc., 25 F.3d 66, 70 (2d Cir.1994) (affirming denial of motion to intervene on ground of untimeliness where intervenor filed motion for intervention eight months after becoming aware of the action and fifteen months after having constructive notice of the action) (additional citation omitted)).

Proposed intervenor-respondents next contend that petitioner has no basis to conclude that intervention would cause him prejudice. Dkt. No. 122 at 7; Dkt. No. 132 at 4-5. However, unlike at the time the Court granted the motion of the original intervenors, this case has progressed significantly. Although, at the time the motion was filed, the discovery deadline was seven months away and depositions had yet to occur, discovery was still underway. Furthermore, discovery in this matter is now closed. It is likely that petitioner will suffer some prejudice due to greater delay in this action due potential that the proposed intervenor-respondents will seek to re-open discovery or, similarly, the need for petitioner to depose them. The Court cannot agree with the characterization of the proposed intervenor-respondents that they are simply "substitut[ing]" for the original intervenors. Dkt. No. 122 at 8; see also dkt. no. 132 at 4 (contending that "[t]he particular identity or medical condition of the Intervenors is irrelevant to the interests of adult home residents to live and receive services in an integrated setting that is not a de facto psychiatric institution."). The new proposed intervenor-respondents will require separate and additional discovery and will have at least some interests that differ from the original intervenors' interests.

Balancing the prejudice to petitioner due to delay should the motion be granted is the Court's acknowledgment that it recently granted petitioner's Motion to Amend, dkt. no. 160, which necessarily will cause some delay resulting from additional, albeit limited, discovery. It is also the case that, should this Court deny the motion to intervene, as the Court found in its January 2019 Decision & Order, a

> ruling striking down the challenged regulations as arbitrary
> and capricious would impact not only Petitioner's rights but

14

> the rights of all persons with a serious mental illness who live in a transitional adult home, including the Intervener-Respondents. By allowing them to remain in this action, the Court ensures that their demonstrated rights and interests are represented where the outcome may have such far-reaching effects.

Dkt. No. 81 at 22. Accordingly, although there would be some prejudice to petitioner should the potential intervenor-respondents' motion be granted, it cannot be said that prejudice to petitioner would outweigh the potential prejudice to the proposed intervenor-respondents should the outcome of this litigation result in a conclusion that results in a conclusion that the challenged regulations cannot stand.

The Court further finds that the proposed intervenor-respondents have an interest in the subject of this litigation for the same reasons as found in the January 2019 Decision & Order. Dkt. No. 81. Although the proposed intervenor-respondents are individuals with a serious mental illness –and, as petitioner suggests, could potentially be barred from their current living situations should the regulations be permitted and the injunction be repealed – it does not necessarily follow that their interest in preventing a greater number of other individuals with serious mental illness from residing in their adult homes is not a significant interest. The proposed intervenor-respondents expressed a desire to prevent their chosen living environments from becoming "de facto mental institutions" and prevent them from "receiv[ing] their public service in the most integrated setting appropriate to their needs." Dkt No. 122 at 10. Similarly, the Court finds that declining the proposed intervenor-respondents the right to intervene may impair them from adequately protecting their interests. As indicated, should this Court conclude that the regulations are arbitrary and capricious, additional persons with

15

serious mental illness could presumably move into the proposed intervenor-respondents' homes, resulting in the more limiting environment that the proposed intervenor-respondents indicate they seek to avoid.  Further, like the Court noted in its January 2019 Decision & Order, a conclusion by this Court could "deprive them of any recourse to otherwise challenge such a determination."  Dkt. No. 81 at 23.

Lastly, the Court cannot currently conclude that respondent will adequately represent the proposed intervenor-respondents' interests for the same reasons expressed in the Court's January 2019 Decision & Order.  Dkt. No. 81 at 24.  Although respondent seeks to uphold the regulations – an interest also reflective of the proposed intervenor-respondents – as proposed intervenor-respondents note, respondent agreed to the TRO which allows adult homes with a high concentration of individuals with serious mental illness to continue admitting such individuals.  The Court acknowledges respondent's statement that the "decision to consent to the TRO on February 16, 2017, does not demonstrate that it is forever unwilling to defend the Challenged Regulations" and that it "is engaged in active litigation in multiple courts defending the Challenged Regulations," dkt. no. 127 at 24, but the Court still finds that "their interests remain different enough that Respondent[] might not adequately represent their unique interests."  Dkt. No. 81 at 24.  Further, the fact that the proposed intervenor-respondents can move out of their current adult homes and into other living environments, dkt. no. 127 at 18, 20-21, does not fully address the Court's concern as it does not protect their interests should they choose to remain in their current living sitautions.  Based on the totality of the circumstances and careful consideration of all of

16

the required factors, the Court finds that these proposed intervenor-respondents meet the standard for intervention as of right under Rule 24(a)(2).

Therefore, the Court declines to hold an evidentiary hearing at this time to determine the "actual interests" of the proposed intervenor-respondents. Dkt. No. 127 at 25-27. The intervenor-respondents have expressed their desires through signed and sworn affidavits. Dkt. No. 121-1; Dkt. No. 121-2. Further, the Court has reviewed, and, thus, is cognizant, of the sealed submissions provided to the Court. This question of the proposed intervenor-respondents' credibility is one that can be explored at the appropriate juncture if needed.

Finally, although the Court finds that the motion to intervene cannot be said to have been timely – despite being filed within the Court's deadline for joinder – it is within the Court's discretion to balance the question of timeliness against the remaining factors. Following full consideration of all factors, for the reasons discussed herein, the balance weighs more heavily in permitting intervention. In so doing, the Court seeks to make clear that it does not intend to allow this litigation to act as a revolving door for intervenors. Allowing the current motion to intervene to proceed should not been seen as indicative of the Court's flexibility to permit further intervenors in the future should the current proposed intervenor-respondents choose to withdraw. Indeed, any future proposed intervenors would be hard-pressed to get beyond the timeliness hurdle, which would be an even more significant impediment going forward. The deadline for joinder of parties is long past expired, discovery is closed, and this action is now over three years old. Thus, questions of timeliness and prejudice to petitioner would likely be

17

significantly more difficult to overcome in any potential attempts at intervention.

### III.  Conclusion

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, it is hereby

**ORDERED**, that the motion of proposed intervenor-respondents to intervene in this action, dkt. no. 120, is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: February 24, 2020
Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge