UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE, a fictitious name,

                                        Petitioner,

v.                                                                          1:17-CV-1005
                                                                             (GTS/CFH)
HOWARD ZUCKER, M.D., in his official capacity as
Commissioner of Health of the State of New York,

                                        Respondent.
_____

APPEARANCES:                                        OF COUNSEL:

O'CONNELL & ARONOWITZ                                JEFFREY J. SHERRIN, ESQ.
  Counsel for Petitioner                            DANIELLE HOLLEY TANGORRE, ESQ.
54 State Street, 9th Floor                          MICHAEL Y. HAWRYLCHAK, ESQ.
Albany, NY 12207

CONSTANTINE CANNON LLP                               ROBERT LOUIS BEGLEITER, ESQ.
  Counsel for Respondent                            GARY MALONE, ESQ.
335 Madison Avenue, 9th Floor                       HARRISON McAVOY, ESQ.
New York, NY 10017                                  MARGAUX POUEYMIROU, ESQ.
                                                    MATTHEW J. KOENIG, ESQ.
                                                    NOELLE M. YASSO, ESQ.

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this action filed by John Doe ("Petitioner") against Dr.

Howard Zucker, Commissioner of Health for the State of New York ("Respondent"), is

Respondent's motion to dismiss Petitioner's Amended Verified Petition for lack of subject-

matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3) and for judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 186.)  For the reasons set forth below,

Respondent's motion is denied.

I.      **RELEVANT BACKGROUND**

A.      **Petitioner's Amended Verified Petition**

Generally, in his Amended Verified Petition, Petitioner asserts four claims: (1) a claim that Respondent has violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, because relevant regulations promulgated by the New York State Department of Health ("DOH") discriminate against persons with mental disabilities by (a) depriving them of their right to choose to live in a transitional adult home ("TAH"), (b) forcing them to accept accommodation in a residence other than the TAH of their choice, and (c) forcing persons in hospitals, nursing homes, or other undesirable or unsuitable housing to remain living in such situations against their desires; (2) a claim that Respondent has violated the Rehabilitation Act of 1973 based on the same discriminatory conduct underlying his First Claim; (3) a claim that Respondent has violated the Fair Housing Act because the relevant DOH regulations deny him the housing of his choice based on his mental disability; and (4) a claim that the DOH regulation is arbitrary, capricious, and irrational.  (Dkt. No. 161 [Am. Verified Petition].)

B.      **Parties' Briefing on Respondent's Motion to Dismiss**

1.      **Respondent's Memorandum of Law**

Generally, in his motion, Respondent argues that the Court lacks subject-matter jurisdiction over Petitioner's claims because those claims have been mooted by recent changes in the DOH regulation at issue that explicitly allow TAHs to apply for a waiver of the relevant rule barring persons with serious mental illnesses from being admitted to a TAH if that TAH is over the allotted capacity for such persons where the person seeking to be admitted to the TAH was formerly a resident of a TAH.  (Dkt. No. 186, at 17-23 [Respondent's Mem. of Law].)

Respondent further argues that, because Petitioner has lived (and, in fact, currently lives) in a TAH, he would be able to benefit from such a waiver if he chose to leave the TAH and later wanted to return, and thus there remains no outstanding injury or issue to be remedied in this case. (*Id.*)

### 2.   Petitioner's Opposition Memorandum of Law

Generally, in opposition to Respondent's motion, Petitioner makes two arguments. (Dkt. No. 190, at 8-22 [Petitioner's Opp'n Mem. of Law].) First, Petitioner argues that the Court's previous determination (in its Decision and Order of July 20, 2018) that his claims are not moot is the law of the case, and there has been no substantive change in the law that would warrant revisiting that finding because the recent amendments to the relevant DOH regulation did not actually alter the State's preexisting power to grant discretionary waivers. (*Id.* at 8-14.) More specifically, Petitioner argues that the DOH regulations already included a waiver provision (18 N.Y.C.R.R. § 487.3[g]) that would have allowed the same discretionary waiver to the TAH policy that was encompassed by the recent amendment (and that the recent amendment actually acknowledges that its power is drawn from 18 N.Y.C.R.R. § 487.3[g]). (*Id.*) Petitioner also argues that (a) the amended policy does not guarantee that all waivers will be granted (but rather continues to make the granting or denial discretionary for DOH decisionmakers), and (b) the amended policy does not allow prospective residents to seek a waiver but requires them to rely on the operator of the TAH to seek such a waiver on their behalf, with no requirement that the operator do so. (*Id.*) Petitioner thus argues that the amendments to DOH's regulations do not constitute a material change in the law.

Second, Petitioner argues that, to the extent that Respondent may assert that DOH has a policy of granting all requested waivers under the amended regulation, such an undocumented, informal policy cannot suffice to moot his claims.  (*Id.* at 14-22.)  More specifically, Petitioner argues that (a) Respondent has not provided any evidence of such a policy, (b) the fact that the policy is informal means that it could change at any time, (c) Petitioner will be harmed even if such a policy does exist because he will be required to go through extra steps to obtain the same benefits as persons who do not have a mental illness and there would be a delay in his ability to enter a TAH due to these extra steps, (d) there is nothing in the regulation or any informal policy that would require a TAH to seek a waiver on his behalf should he choose to leave his current TAH and wish to later return, and (e) the regulation, notwithstanding any informal policy to grant waivers, still would not allow him to move directly from his current TAH to a different TAH should he wish to do so.  (*Id.*)

### 3.    Respondent's Reply Memorandum of Law

Generally, in reply to Petitioner's opposition, Respondent makes two arguments.  (Dkt. No. 191, at 5-14 [Respondent's Reply Mem. of Law].)  First, Respondent argues that the law-of-the-case doctrine is inapplicable here because the Court never ruled on the issue now presented in its Decision and Order of July 20, 2018; in that Decision and Order, the Court ruled that Petitioner has standing based on his original Petition, but the Court is now considering the Amended Petition and the newly amended DOH regulation that explicitly provides a waiver.  (*Id.* at 5-7.)  Respondent also argues that the law-of-the-case doctrine should nonetheless not be used to foreclose reconsideration of subject-matter jurisdiction because such jurisdiction is an essential prerequisite to the Court's ability to decide Petitioner's claims.  (*Id.*)

4

Second, Respondent argues that Petitioner has failed to meet his burden to show that he is likely to be negatively affected by the DOH regulations in light of the recent waiver amendments.  (*Id.* at 7-14.)  More specifically, Respondent argues that (a) there is no indication that Respondent would return to denying persons such as Petitioner the ability to be readmitted to a TAH in light of the new waiver provision, and thus this new course of action is a legitimate cessation of the regulatory practice Petitioner challenges, (b) Petitioner has not alleged any actual intention to engage in conduct that would be barred by the regulations (i.e., leaving the TAH and then returning, or transferring to another TAH), and merely speculative statements that he has thought about potentially moving in the future (without any real plan to do so) do not suffice to establish an imminent injury, (c) Petitioner has not alleged a credible threat that the DOH regulation would bar him from moving or that any delay caused by the waiver procedure would cause him a legally redressable injury, and (d) Petitioner has offered nothing to support his interpretation of the regulations as barring him from moving directly to another TAH from his current TAH (e.g., that such a move would not qualify for a waiver).  (*Id.*)

## II.    GOVERNING LEGAL STANDARDS

### A.  Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory authority to adjudicate it.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The

Plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

### B. Legal Standard Governing Motions for Judgment on the Pleadings

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is governed by the same standard governing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983).

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice of* what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court

7

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

8

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

## III.    ANALYSIS

After careful consideration, the Court answers the question of whether it has subject-matter jurisdiction over Petitioner's claims (and whether Petitioner has adequately pled subject-matter jurisdiction) in the affirmative for the reasons stated in Petitioner's opposition memorandum of law.  (Dkt. No. 190 [Petitioner's Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, the Court notes that Respondent appears to make interchangeable the jurisdictional requirements of standing and mootness throughout his memoranda.  *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (noting that the assessment of an injury under the standing analysis and mootness are separate and distinct; "there are circumstances in which the prospect that a defendant will engage in [or resume] harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness").  Because Respondent appears to argue both that (a) Petitioner's claims have been mooted by DOH's voluntary cessation of the portion of the DOH regulations that

Petitioner challenges, and (b) Petitioner has not shown that he still has standing to pursue his claim because he can no longer show a sufficiently imminent threat of injury, the Court will address both standing and mootness separately in this Decision and Order.

Additionally, in his reply memorandum of law, Respondent cites evidence attached to Petitioner's opposition memorandum of law as proof that DOH has been granting all requests for waivers that have been submitted since the regulations were clarified and amended during the course of this litigation, and argues that this evidence supports his argument that no case or controversy or nonspeculative injury remains at issue in this litigation.  However, the Court finds this evidence unpersuasive for two reasons.

First, such anecdotal evidence, even if it shows the existence of a policy, in no way means either that the policy could not be changed at a later time or that Petitioner is not required to go through extra steps to obtain the same benefits as persons who do not have a mental illness.

Second, even setting aside those facts, although the Court may consider extrinsic evidence when assessing subject-matter jurisdiction even at the motion-to-dismiss stage, it is reluctant to place great importance on the evidence submitted by Petitioner at this stage in the litigation because Respondent did not submit any extrinsic evidence in support of his own motion; and thus his motion is more-properly construed as being only a facial motion pursuant to Fed. R. Civ. P. 12(b)(1).  *See Carter v. HealthPort Technologies, LLC,* 822 F.3d 47, 56 (2d Cir. 2016) (distinguishing between the different courses of action the court should take depending on whether the motion is a facial or a fact-based motion).  Specifically, in order to make a fact-based motion, Respondent would have needed to proffer evidence beyond the pleadings, which would have in turn triggered a requirement for Petitioner to submit contrary evidence if the

10

evidence submitted by Respondent created an issue of fact as to the existence of subject-matter jurisdiction. *See Carter*, 822 F.3d at 57.  However, Respondent did not submit any evidence with either his motion or his reply memorandum of law.  Thus, Respondent's motion is more-properly construed as being facial in nature, that is, based solely on the Amended Verified Petition, and "[t]he task of the district court is to determine whether the Pleading 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue'" and that a case or controversy remains.  *Carter*, 822 F.3d at 56.

As a result, although the Court has reviewed the evidence submitted by Petitioner, it will still assess whether the facts alleged by Petitioner plausibly suggest the existence of subject-matter jurisdiction.

### A.  Mootness

Article III of the United Stated Constitution allows courts to decide only "Cases" and "Controversies"; a court has no jurisdiction to decide legal disputes or expound on the law in the absence of a case or controversy.  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).  The Supreme Court has made clear that "an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation."  *Already, LLC*, 568 U.S. at 90-91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 [2009]).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC*, 568 U.S. at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 [1982]).  "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs'

11

particular legal rights.'" *Already, LLC*, 568 U.S. at 91 (quoting *Alvarez*, 558 U.S. at 93);

*American Freedom Defense Initiative v. Metropolitan Transp. Auth.*, 815 F.3d 105, 109 (2d Cir.

2016) ("A case becomes moot only when it is impossible for a court to grant any effectual relief

whatever to the prevailing party.").

      Where the argument of mootness comes from the defendant's voluntary cessation of the

allegedly wrongful behavior, that defendant "'bears the formidable burden of showing that it is

absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"

*Already, LLC*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190).  "[C]ourts

will find a case moot after a defendant voluntarily discontinues challenged conduct only if '(1) it

can be said with assurance that there is no reasonable expectation that the alleged violation will

recur' and '(2) interim relief or events have completely and irrevocably eradicated the effects of

the alleged violation.'" *American Freedom Defense Initiative*, 815 F.3d at 109 (quoting *Cty. Of

Los Angeles v. Davis*, 440 U.S. 625, 631 [1979]).  In determining whether the conduct has

ceased, "[t]he relevant question is whether the defendant's conduct has been 'sufficiently altered

so as to present a substantially different controversy from the one' that existed when . . . suit was

filed." *American Freedom Defense Initiative*, 815 F.3d at 109 (quoting *Lamar Advertising of

Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 378 [2d Cir. 2004]).

      As an initial matter, the Court finds that the law-of-the-case doctrine is not applicable in

this situation.  Although the Court did previously render findings on whether Petitioner's claims

were mooted by the decision to allow him to return to Oceanview Manor, it did not explicitly

consider the effect of any waiver provision on that finding.  (Dkt. No. 51, at 21-22 [Decision and

Order filed July 20, 2018].)  In particular, there appears to have been no indication that the DOH

was applying any waiver provision or policy to relevant individuals at the time the Court previously found that the case was not moot, because there was still a possibility that Petitioner would suffer the same harm if he chose to again leave Oceanview in the future.  (Dkt. No. 51 [Decision and Order filed July 20, 2018].)  The subsequent application of the waiver provision to individuals who had previously resided in TAHs creates a different situation than what was presented to the Court at that time.  As a result, the Court declines to apply-the-law-of-the-case doctrine, but rather considers all of the allegations and law now presented as part of this motion.

Petitioner argues that his claims are not moot because, although he has been living at Oceanview Manor since October 31, 2017, pursuant to a temporary restraining order, there is still a legitimate danger that he could be prevented from returning to Oceanview Manor or any other TAH should he choose to leave Oceanview Manor at any point in the future.  Plaintiff argues that this danger exists despite the ability to obtain a waiver under 18 N.Y.C.C.R. § 487.4(e)(3)(ii) because (a) such waiver is discretionary and there is no guarantee that DOH will grant waivers for all individuals who want to return to a TAH, (b) the waiver must be sought by the operator of a TAH and there is no obligation on a TAH to seek a waiver for any individual who wants one, and (c) the waiver process imposes additional burdens on persons on the basis of their mental conditions and would result in a delay in placement into a TAH.

The amended provision relied on by Respondent, 18 N.Y.C.C.R. § 487.4(e)(3)(ii), states that "[t]he operator may admit the prospective resident only when the mental health evaluation concludes the individual: (a) is not a person with serious mental illness; or (b) is a person with serious mental illness, but the individual is a former resident of a transitional adult home and the operator obtains a waiver approved by the Department pursuant to subdivision (g) of section

487.3 of this Part."  18 N.Y.C.C.R. § 487.4(e)(3)(ii).  Thus, as Petitioner argues, the amended

portion of the regulation specifically references (and relies on) 18 N.Y.C.C.R. § 487.3(g) as the

authority for granting a waiver in such circumstances.

Section 487.3(g)(1) states the following: "[u]pon request by the operator, the department

may waive nonstatutory requirements of this Part.  An operator must request and receive written

approval prior to instituting any alternative."  18 N.Y.C.C.R. § 487.3(g)(1).  The Court notes that

the relevant part of this section has been in effect since at least January 16, 2013, the time of the

most recent amendment.[1]  Consequently, the ability of an operator to seek a waiver of any

nonstatutory requirement of Part 487 existed at all times throughout this lawsuit.  Because it

appears that the prohibition on admissions of persons that would increase the mental health

census of a TAH over 25-percent or more of the resident population is regulatory (i.e.,

nonstatutory), Petitioner is correct that 18 N.Y.C.C.R. § 487.3(g)(1) would have allowed the

DOH to consider and grant a waiver of that requirement for an individual who had previously

been a resident of a TAH even before the DOH enacted 18 N.Y.C.C.R. § 487.4(e)(3)(ii).  Thus,

18 N.Y.C.C.R. § 487.4(e)(3)(ii) represents a clarification of the law for this specific context

rather than a material change to it.

Regardless of whether the law changed in any material respect, it is undisputed by the

parties that the DOH has altered its behavior during the course of this litigation in that it now

grants waivers of the mental health census limitation for TAHs to persons who have previously

been residents of a TAH, something which it did not do previously.  The evidence provided by

---

[1]     The Court notes that 18 N.Y.C.C.R. § 487.3(g) was recently amended through emergency
rulemaking in August 2020; however, those amendments did not include or alter the specific
relevant language from 18 N.Y.C.C.R. § 487.3(g)(1).

Petitioner with his opposition memorandum of law indicates that all waivers that have been requested by TAHs on behalf of individuals with a serious mental illness who were previously residents of a TAH that complied with the requirements of 18 N.Y.C.C.R. § 487.4(e)(3)(ii) have been granted.  (Dkt. No. 190, Attach. 4, at 2-4; Dkt. No. 190, Attach. 5, at 6-7.)

However, regardless of changes made to Respondent's and the DOH's policies and actions, Petitioner is correct that there is no guarantee that a waiver would be approved as a matter of course in the future should he leave Oceanview Manor and then wish to return to a TAH.  Although Petitioner submitted evidence that the DOH has been granting waivers since the issuance of the policy clarification, the Court cannot ignore the fact that the decision of whether to grant a waiver under the regulations is entirely discretionary to the DOH.  Given this discretion, there is simply nothing to prevent the DOH from declining to grant requests for waivers if this case is dismissed.  *See Mhany Mgmt, Inc. v. Cty. of Nassau*, 819 F.3d 581, 603-04 (2d Cir. 2016) (stating that a defendant asserting mootness based on voluntary compliance must show that it is "*absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur," and that such burden is both "stringent" and "formidable") (emphasis in original).  This discretion leads to uncertainty.  As the Court previously recognized, where there is nothing to suggest that the government is bound to continue to follow a course of conduct (such as the absence of any evidence that a change of leadership could not result in different decisions of the sort a petitioner is contesting), the government does not meet its heavy burden to show mootness as a result of voluntary cessation.  (Dkt. No. 51, at 22-23 [Decision and Order filed July 20, 2018] ["Were the Court to dismiss Petitioner's claims regarding the DOH and OMH regulations, other than through the exercise of the burdensome right to recommence

15

litigation, there might be no legal remedy for Petitioner to pursue in the event DOH and OMH (through a change in leadership or policy) later decide not to allow Petitioner to transfer or return to a transitional adult home of his choosing."].)  As a result, the Court finds that Plaintiff's claims have not been mooted by Defendant's actions.

### B. Standing

Respondent's arguments about standing relate to whether there remains an injury-in-fact that is sufficiently immediate.  An injury for the purposes of standing must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  An allegation of future injury may suffice if the threatened injury is "clearly impending," or there is a "'substantial risk' that the harm will occur."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 441 n.5 (2013); *see also Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) ("To establish standing to obtain prospective relief, a plaintiff must show a likelihood that he will be injured in the future.").  The likelihood of future injury must be "real and immediate," though it need not be certain.  *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004).  "At the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury."  *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan*, 504 U.S. 561.)  Specifically, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for *on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim*."  *Carter*, 822 F.3d at 56 (emphasis in original).

As an initial matter, the Court notes that many of the allegations relied on by Petitioner in support of his assertion of continued standing were raised in his opposition memorandum of law,

but do not actually appear in his Amended Verified Petition.  (Dkt. No. 190, at 7, 19-22 [Petitioner's Opp'n Mem. of Law].)  Petitioner acknowledges that he currently resides at Oceanview Manor as a result of a previous court order.  (Dkt. No. 161 at ¶¶ 60, 62 [Am. Verified Petition].)  However, he does not specifically provide any factual allegations about the waiver provision in the regulations or about what would happen if he were to wish to move to another TAH or leave Oceanview Manor and subsequently wish to return to a TAH.

The Court finds that, under the circumstances, it is appropriate to consider all of Petitioner's allegations (including those made with more detail in his opposition memorandum of law) when determining whether he has sufficiently alleged facts plausibly suggesting that standing exists.  This litigation has been pending before this Court since September 2017 when it was removed from the New York State Supreme Court.  Both this Court and the New York State Supreme Court have already had multiple occasions to consider issues related to the injuries alleged by Petitioner, including those prospective injuries that Petitioner discusses in his opposition memorandum of law (the most relevant of which is the possibility that he would not be permitted to return to a TAH if he were to leave Oceanview Manor if DOH denied a waiver request on his behalf).  (Dkt. No. 1, Attach. 8 [Decision of Acting New York State Supreme Court Justice Kimberly A. O'Connor dated Aug. 3, 2017]; Dkt. No. 51 [Decision and Order filed July 20, 2018]; Dkt. No. 81 [Decision and Order filed Jan. 4, 2019].)  Thus, to say that Petitioner has not alleged these harms sufficiently to make them part of the Court's standing analysis simply because he has not spelled them out explicitly in the Amended Verified Petition would be to ignore the entire course of this litigation.  Additionally, Respondent's motion makes it clear that he is well aware that Petitioner has been alleging an inability to return to a TAH in the future

as a prospective injury based on the fact that Respondent's arguments revolve around how the clarifications to the regulations related to granting waivers mitigate the risk or likelihood that Petitioner would be denied admission into a TAH in the future should he leave Oceanview Manor.  (Dkt. No. 186, Attach. 1 [Respondent's Mem. of Law].)  As a result, the Court finds that Respondent cannot credibly argue that he was unaware at the time he filed his motion that Petitioner had made such allegations.

To the extent that Petitioner argues that there remains a sufficient likelihood of future injury due to the fact that there is no guarantee that a TAH operator will submit a waiver request on behalf of every former TAH resident that would like to return to a TAH, such allegation cannot suffice to show standing because it is based on the contingent discretionary actions of a third party.  *See Himber v. Intuit, Inc.*, 10-CV-2511, 2012 WL 4442796, at *1 (S.D.N.Y. Sept. 25, 2012) ("It is well settled under Supreme Court and Second Circuit jurisprudence that there is no standing where a finding of harm is contingent on the discretionary decision of an independent actor . . . whom the courts cannot control or predict.").

More to the point, Petitioner argues that there is a sufficient likelihood of future injury due to the fact that DOH (which is overseen by Respondent in his capacity as the Commissioner of Health and thus not an independent third-party actor)[2] has absolute discretion over whether to grant any request for waiver that is submitted on an individual's behalf, and thus there is no guarantee that he would be granted a waiver even if he otherwise meets all the requirements for re-admission to a TAH.  As discussed above in Part III.A. of this Decision and Order, although

---

[2]     Notably, in the Amended Verified Petition, Petitioner alleges that Respondent is responsible for both the promulgation of DOH regulations and administration of the DOH, including its regulation of adult homes.  (Dkt. No. 161, at ¶ 5 [Am. Verified Petition].)

Petitioner presented some evidence that DOH has begun to issue waivers to allow former residents of TAHs with a serious mental illness to be readmitted to a TAH since the beginning of this litigation, two facts stand out: (1) DOH always had the power to issue such waivers pursuant to 18 N.Y.C.C.R. § 487.3(g)(1), but it simply did not do so; and (2) regardless of the relevant changes in the regulations, the decision of whether to grant a waiver in any individual circumstance remains entirely within the discretion of DOH.  The Court finds that the discretionary nature of the waiver is sufficient to show that Petitioner has standing for the purposes of a motion for judgment on the pleadings.

Although it is not certain that Petitioner would be denied a waiver should one be submitted on his behalf in the future, the fact that DOH has complete discretion to deny such a waiver renders Petitioner's allegation of prospective injury sufficiently nonspeculative, even in the absence of any allegation that Petitioner has current plans to move from Oceanview Manor. Moreover, although the prospective injury is contingent on certain events occurring in the future (i.e., moving from Oceanview Manor, subsequently wishing to return to a TAH, and being denied a waiver by DOH to do so), that injury is not merely hypothetical given that Petitioner suffered it in the past and the discretionary nature of the waiver provides no guarantee or concrete indication that he would be granted such a waiver in the future; additionally, Petitioner has alleged that he suffers from a serious mental illness, a fact that, in this Court's opinion, increases the likelihood that he might again find himself in an unstable housing position.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting that "past wrongs," while not sufficient to show an ongoing case or controversy, are "evidence bearing on 'whether there is a real and immediate threat of repeated injury.'"); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239

(2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").  As discussed above, the future injury does not need to be certain, but merely there must be a sufficient likelihood that the injury will occur.  The Court finds that, considering the standard applicable at the pleadings stage, Petitioner has sufficiently met the burden to show that he has standing.

Notably, this case is distinguishable from *Lyons* and the cases cited therein, in which the Supreme Court found that allegations that a plaintiff could be arrested or subjected to improper behavior in the future due to their experience of such in the past were insufficient to confer standing for injunctive or declaratory relief.  *Lyons*, 461 U.S. at 102-08 (citing *O'Shea v. Littleton*, 414 U.S. 488 [1974] [likelihood that plaintiffs would face discriminatory actions by a judge or administrative officials following a hypothetical future arrest and prosecution was too speculative]; *Rizzo v. Goode*, 423 U.S. 362 [1976] [the inability to show a policy of discriminatory treatment of minorities by police rendered claims of injury based on expectation of future discriminatory treatment too speculative]; *Golden v. Zwickler*, 394 U.S. 103 [1969] [finding no standing where plaintiff was no longer a Congressman apt to run for reelection and thus it was unlikely he would again be subjected to the challenged statute, despite his assertions that he could be a candidate at some point in the future].)  The series of events involved in those cases (i.e., breaking a law in the future, having an encounter with police, and police using improper tactics like chokeholds) were all extremely speculative.  Here, however, the Court is addressing Petitioner's daily living situation, and any action that would remove him from Oceanview Manor triggers the likelihood of future injury, whether that removal were by his

20

personal choice or the result of some other circumstance.  *See Knife Rights v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) ("The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue.").

As a result, the Court finds that the likelihood that the harm could arise in the future is much less speculative here than in the above cases.  Indeed, because the waiver process is entirely discretionary and there has been no actual guarantee that Petitioner would in fact be granted a waiver in the future should he require one, the Court is not convinced that so much has fundamentally changed over the course of this litigation to justify a finding that standing no longer exists.  (*See* Dkt. No. 1, Attach. 8, at 5-6 [Decision of Acting New York State Supreme Court Justice Kimberly A. O'Connor dated Aug. 3, 2017] [finding that the fact that the regulations would prohibit Petitioner from moving to another TAH or returning to a TAH if he chose to leave Oceanview at any point raised more than a purely speculative harm because of "the realities of mental illness, which make the likelihood of the harm alleged more real and possible than not" and there were no assurances from Respondents that the regulations would absolutely not be enforced against Petitioner in the future should the above circumstances arise].)

In conclusion, although Respondent might be able to present evidence showing with greater certainty that Petitioner has no real risk of future exclusion from a TAH at a later stage of this proceedings (such as on summary judgment) despite the discretionary nature of the waiver process, the Court finds there are sufficient factual allegations at this stage to find that Petitioner has standing for the purposes of continuing to exercise subject-matter jurisdiction over this action.

21

Lastly, to the extent that Respondent filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), Respondent has not raised any arguments related to the legal sufficiency of Petitioner's claims (separate and apart from the issue of subject-matter jurisdiction).  In the absence of any specific arguments of error in that respect, the Court declines to essentially *sua sponte* review the legal sufficiency of Petitioner's claims (again, separate and apart from the issue of subject-matter jurisdiction).

**ACCORDINGLY**, it is

**ORDERED** that Respondent's motion (Dkt. No. 186) is **<u>DENIED</u>**.

Dated: November 30, 2020
  Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge