**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN DOE,

                              Petitioner,

      v.                                                           1:17-CV-1005
                                                                             (GTS/CFH)

HOWARD ZUCKER, M.D.,

                              Respondent.

---

**APPEARANCES:**                                     **OF COUNSEL:**

O'Connell, Aronowitz Law Firm            MICHAEL HAWRYLCHAK, ESQ.
54 State Street, 9th Floor
Albany, New York 12207-2501
Attorneys for plaintiff

Constantine, Cannon Law Firm             GARY J. MALONE, ESQ.
335 Madison Avenue, 9th Floor
New York, New York 10017-4611
Attorneys for defendant

## MEMORANDUM-DECISION & ORDER

Pending before the Court is petitioner John Doe's motion to compel the production of documents. See Dkt. No. 240. Respondent opposed. See Dkt. No. 242. Familiarity with the facts and procedural history of this case is presumed and will be repeated here only to the extent necessary to address this motion.

## I. Arguments[1]

---

[1] Citations to the parties' submissions refer to the pagination generated by the Court's electronic filing system, CM/ECF, located at the header of each page, not to the individual pagination of each document.

The instant motion to seeks to compel the production of fifty-four documents that the respondent State withheld as protected by the attorney-client privilege[2] – PRIV73-76, PRIV86-88, PRIV 104-106, PRIV221, PRIV248, PRIV281-93, PRIV 296-320, PRIV 330, PRIV 337, PRIV 339, and PRIV 348.  See Dkt. No. 240-1 at 16-17.  Petitioner argues that good cause exists to compel the production of these documents, despite the expiration of the oft-extended discovery deadline on June 21, 2021.  See Dkt. No. 214.  Petitioner concedes that he did not originally challenge the assertions of attorney-client privilege set forth in the Department of Health's ("DOH") privilege log,[3] dkt. no. 240-4, because "the description for every entry . . . related to the Clinical Advisories explicitly asserted that it was related to the provision of legal advice[,]" leading him to believe that "he did not have sufficient grounds to challenge the withholding of these documents and compel their production."  Dkt. No. 240-1 at 5.  By contrast, the Office of Mental Health ("OMH") privilege log, dkt. no. 240-3, "asserted the protection of the attorney-client privilege for various documents," but "did not represent that these communications were for the purpose of conveying legal advice."  Id. at 4-5.  Thus, petitioner considered OMH's privilege log "facially deficient," giving him a basis to challenge the claims of privilege, whereas he did not believe he could challenge DOH's log because it distinctly claimed that the documents involved the giving or receiving of legal advice.  Id. at 5.

It was not until petitioner read the three OMH e-mails, which the State produced on July 26, 2021,[4] "that Petitioner was able to see not only that the State's assertion of

---

[2]  Some of the documents were also withheld under the deliberative process privilege.  See, e.g., Dkt. No. 242 at 5.
[3]  Petitioner "instead sought production of the withheld OMH documents, arguing, among other things, that the OMH privilege log did not on its face support valid claims of attorney-client privilege."
[4]  See Dkt. No. 240-1 at 6 (citing Dkt. No. 240-7).

2

the privilege was baseless, but also that the State was invoking this supposed privilege to prevent disclosure of documents damaging to its case." Dkt. No. 240-1 at 3. "In light of new knowledge due to the disclosed e-mails," petitioner "has reason to question additional assertions of privilege that, on the basis of the State's privilege log, appeared facially plausible." Id. Petitioner further argues that documents that the State produced on September 24, 2021, after petitioner asked respondent to reassess the DOH privilege log following the Court's denial of respondent's request for a stay, "reflect[s] a deliberate mischaracterization of the documents to extend the protection of the privilege where it does not belong." Id. at 19 (citing dkt. nos. 240-21, 240-22, 240-23). Therefore, believing that at least some of the fifty-four documents are being withheld under the guise of attorney-client privilege to shield from disclosure damaging documents or communications, petitioner seeks in camera review and production of any documents the Court finds to be "not validly privileged from disclosure[.]" Id. at 3-4.

Respondent argues that petitioner unduly delayed in his request to compel the production of the fifty-four documents in question and cannot demonstrate good cause. See Dkt. No. 242 at 4, 9. Respondent notes that it produced the three e-mails on July 26, 2021, and petitioner "waited until August 31, 2021, to even identify the documents at issue to the State," requested a discovery conference on September 27, 2021, and filed his motion to compel on November 9, 2021. Id. at 10. Respondent further disputes petitioner's interpretation of the three OMH e-mails and their import. See id. at 13-19. Respondent reiterates its argument that the fifty-four documents are properly designated as protected by the attorney-client and deliberative process privileges. See id. at 19-28. Respondent contends that, despite petitioner's argument "that his motion

3

is based on his review of the documents produced by OMH, Petitioner's review of the documents produced by OMH on November 30, 2020, would have given him the same grounds to move that he now asserts.  Petitioner tactically delayed until the Court decided Petitioner's earlier motion to compel." Id. at 11.

      Finally, petitioner disputes respondent's argument that he had sufficient notice "of potential deficiencies in the DOH privilege log" when OMH "produced a number of previously-withheld documents on November 30, 2020," because the produced documents "were email chains that included the Three Emails, which remained completely redacted."  Dkt. No. 240-1 at 18.  "To the extent that these documents could be reliably correlated with entries in the DOH privilege log, Petitioner could not know whether the log descriptions accurately described communications in the redacted portions."  Id.

## II.  Legal Standard

      A "party seeking to file a motion to compel after discovery has closed must . . . establish good cause" and "good cause is not established where the request is premised on documents made available before the close of fact discovery."  In re Terrorist Attacks on Sept. 11, 2001, 03 MDL 1570 (GBD/SN), 2021 WL 3519071, at *6 (citing Gucci Am., Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 139, 141 (S.D.N.Y. 2011)).  "'[T]he primary consideration' in determining whether good cause has been shown 'is whether the moving party can demonstrate diligence.'"  New York v. Mountain Tobacco Co., No. 12-CV-6276 JS SIL, 2015 WL 3455080, at *13 (E.D.N.Y. May 29, 2015) (quoting Casagrande v. Norm. Bloom & Son, LLC, 11-cv-1918, 2014 WL 5817562, at *2

4

(D.Conn. Nov. 10, 2014) (additional citation omitted)). Factors beyond diligence that courts have considered when assessing a motion to compel include "'(1) the imminence of a trial; (2) whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence.'" Id. (citing Casagrande, 2014 WL 5817562, at *6). Ultimately, "'[c]ourts possess extensive power to regulate discovery and enforce their scheduling orders . . . .'" Convolve, Inc. v. Compaq Comp. Corp., No. 00-CV-5141 (GBD/JCF), 2008 WL 5203675, at *2 (S.D.N.Y. Dec. 10, 2008); see also N.D.N.Y.L.R. 16.1(f) ('The Court shall strictly enforce any deadlines that it established in any case management order[, including scheduling orders], and the Court shall not modify these . . . except upon a showing of good cause.')." Giraldi v. Bd. of Parole, State of New York, No. 9:04-CV-877 (FJS/DRH), 2009 WL 3191530, at *7 (N.D.N.Y. Sept. 30, 2009).

### III.  Discussion

    This Court must consider whether good cause exists both for petitioner's delay and to warrant the consideration of additional documents via in camera review. Petitioner does not dispute that he filed his motion more than fourteen days after the expiration of the discovery deadline, rather, that good cause exists for his delay. See Dkt. No. 240-1 at 17-19; N.D.N.Y. Local Rule 16.2, 37.1(h). He contends that because respondent intentionally misrepresented the privilege status of the three e-mails, he had no basis to question the veracity of the claims of privilege in the DOH log until he received the e-mails and saw otherwise. See id. at 18.

The Court disagrees. Petitioner contends that he was unable to determine that DOH improperly withheld documents under the claim of attorney-client privilege until July 26, 2021,[5] when he received unredacted copies of the three OMH e-mails. See Dkt. No. 240-1 at 18.  Although addressing the challenged OMH privilege log, the Court's November 19, 2020, decision revealed that some of the documents, primarily the three OMH e-mails, were not properly withheld as attorney-client privileged.  See generally dkt. no. 195.  Because reasonable efforts could have led plaintiff to conclude that the three e-mails in the OMH log were also contained within the DOH log, once the Court determined the attorney-client privileged designation to be improperly claimed in the OMH log, petitioner had reason to call into question the State's claim of privilege for the same three e-mails in the DOH log and the remaining documents at the time the Court issued this decision.  See Dkt. No. 195.

Petitioner argues that the State's production of previously-withheld documents on November 30, 2020, did not alert him of the need to challenge the DOH's log because "[t]o the extent that these documents could be reliably correlated with entries in the DOH privilege log, Petitioner could not know whether the log descriptions accurately described communications in the redacted portions.  At best, this was evidence that

---

[5]  Respondent acknowledges that OMH produced to petitioner the unredacted versions of the three OMH emails on July 26, 2021, but contends that "[d]uring the next month, Petitioner did not indicate that he was challenging any assertions of privilege on the State's privilege log."  Dkt. No. 242 at 11 (citing Dkt. No. 233 at 2).  Respondent notes that on August 5, 2021, petitioner's counsel contacted the State's counsel to request "a meet-and-confer call to discuss a possible request to reopen discovery," and although counsel "mentioned the possibility of seeking further depositions, Petitioner did not ask the State to reconsider the assertion of privilege with respect to any documents on the State's privilege log." Id. at 12.  Respondent contends that it was not until parties' meet and confer call on August 30, 2021, that petitioner revealed for the first time that "he had concerns that documents on the State's privilege log might be wrongly designated as privileged."  Id.

DOH had similarly over-withheld the non-privileged replies to email chains containing earlier privileged messages." Dkt. No. 240-1 at 18.

Ultimately, petitioner's choice was a strategic one. To the extent petitioner argues that it "only when [he] received the underlying Three Emails" that it "was clear that they did not pertain to requesting or providing legal advice at all," although petitioner would not have known the exact content of OMH e-mails he was challenging at the time of the November 19, 2020, Memorandum-Decision & Order and November 30, 2020, disclosure, the decision held that the three e-mails were not attorney-client privileged and did not involve the giving or receiving of legal advice. See Dkt. No. 195. Thus, once the Court concluded that the three OMH e-mails fell outside of the attorney-client privilege, petitioner would have had notice to challenge the DOH log, as the DOH log defined these same documents as privileged due to the giving or receiving of legal advice. Even with the redactions in the November 30, 2020, disclosures, there was enough information available to petitioner – dates, time stamps, subject names of the e-mails, and senders and recipients of e-mails (identified by their names and e-mail addresses), such that petitioner reasonably could have identified that the three OMH e-mails were also withheld by DOH. Knowing that DOH withheld these e-mails as privileged and that the Court concluded that the OMH log improperly withheld the e-mails, would have given petitioner cause to challenge the claims of privilege in the DOH log at that time. See Dkt. No. 240-19. Insofar as petitioner contends that the OMH and DOH logs defined the same documents using different terms, with the redacted three OMH e-mails in hand, petitioner could compare with the DOH privilege log and compare by date, sender/recipients, and reference to the clinical advisory to conclude that it was

7

likely that the three e-mails were the same documents included in the DOH log. It would not be unreasonable for petitioner to assess that at least some of the communications he was challenging in the OMH log were repeated in the DOH log such that his failure to compel the DOH documents could later result in their preclusion. See Dejesus v. Bradt, No. 13-CV-6066, 2016 WL 1226859, at *1 (W.D.N.Y. Mar. 23, 2016) ("Because of plaintiff's delay [in objecting to the defendant's discovery production], this court is tasked with resolving a discovery dispute well after the close of discovery and while [the assigned District Judge] simultaneously evaluates the merits of defendants' motion for summary judgment.").

Accordingly, the Court finds that petitioner has not demonstrated good cause for the delay in bringing this motion, as petitioner did not need to be able to read the full content of the three OMH e-mails to be aware that the DOH log also contained at least these three documents, giving him cause to challenge the DOH log at that time.

In addition to determining that petitioner has not shown good cause for his delay, petitioner has also not demonstrated that the totality of the circumstances warrant the granting of his motion. Indeed, although the Court concluded that three e-mails were not properly withheld as attorney-client privileged in the OMH log, it does not necessarily follow that there are other documents that have been improperly withheld. Petitioner essentially argues that, because the Court found that respondent improperly designated some documents as attorney-client privileged, it must have done so with additional documents. However, petitioner proffers no reason to suggest that any additional documents are improperly withheld. Indeed, it is noted that, in petitioner's initial letter motion to compel, although determining that the three e-mails were not

8

protected by attorney-client privilege, the Court concluded that at least one communication was properly designated by the State as protected. Dkt. No. 195 at 15; see also id. at 10-11. Since the decisions on the initial motion to compel, motion for reconsideration, and appeal were issued, the State has had a chance to reevaluate its claims of privilege and turn over any documents that did not fit that definition based on the Court's decisions, and it did so. See Dkt. No. 240-1 at 16. Were the Court to hold otherwise, it would be setting forth an unsustainable precedent, such that in nearly any case where the Court determines, after in camera review, that any withheld documents are not protected by privilege, the moving party could then move to compel the disclosure of additional documents withheld as privileged, contending that the nonmoving party may be improperly withholding further documents. Allowing such a holding is "'a slippery bobsled slope into additional . . . discovery requests by both sides.'" Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc., 328 F.R.D. 450, 452 (S.D.N.Y. 2018) (internal citation omitted). "Discovery deadlines exist for a reason. They bring closure and eliminate additional burden and expense." Syntel, 328 F.R.D. at 452.

In addition, petitioner has not met his burden of demonstrating the significance or relevance of additional documents. Although documents relevant to the 25% figure in the clinical advisory would be relevant to petitioner's claims, petitioner does not provide information to the Court to suggest what he believes may be contained in any of the fifty-four documents and how it may differ from discovery he already has. Indeed, were the Court to adopt petitioner's interpretation of the three e-mails,[6] it would seem likely

---

[6] To be as clear as possible, the Court does not reach this issue and makes no finding on the import of the three e-mails.

9

that any additional documents would be redundant as the three e-mails would contain substantial support for petitioner's theory.  See generally Syntel 328 F.R.D. at 452 (" . . . . the Court finds that the marginal utility of the documents requested, if any, is outweighed by the burdens and delays that would be imposed. Thus, the discovery sought is not proportional to the needs of the case.") (citing Fed. R. Civ. P. 26(b)(1)).

      Finally, should the Court grant petitioner's motion to compel, this case – which was commenced in 2017 and has pending before it fully briefed motions for summary judgment – would face significant delays, causing substantial prejudice to respondent. See dkt. nos. 237, 238. The Court would need time to review and assess the confidentiality status of the fifty-four documents, draft a decision, potentially allow time for briefing and consideration of a motion for reconsideration and/or an appeal, and, potentially, the reopening of discovery and dispositive motions if it is determined that any documents need to be produced.[7]

### IV.  Conclusion

      Wherefore, for the reasons stated herein, it is hereby

---

[7] Petitioner suggests that, because his "prior privilege challenge resulted in no fewer than three opinions from this Court carefully reviewing the caselaw and its application in the context of this case," "[t]he applicable legal standard is well-established through these rulings, and the Court is already familiar with the general factual context in which the documents at issue were created, . . . this Court is well-situated to quickly and efficiently determine whether the disputed documents have been withheld under a valid claim of privilege."  Dkt. No. 240-1 at 21.  Thus, petitioner suggests the Court could issue a "summary decision on the privilege status of each of the documents without written opinion."  Dkt. No. 240-1 at 21.  This Court, in certain circumstances not present here, has issued decisions on motions to compel without a formal written opinion, but with a bench decision.  However, petitioner over-simplifies the time involved both in reviewing documents in camera and issuing a "summary decision," as well as the Court's significant caseload.  Further, given the earlier motion for reconsideration and appeal of the first motion to compel, the Court would not be inclined proceed without written opinion if it had determined in camera review to be appropriate.

**ORDERED**, that petitioner's motion to compel, Dkt. No. 240, is **DENIED**; and it is further

**ORDERED**, that the clerk of the court serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 25, 2022
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge